<pre>
              IN THE UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF IOWA
                       CENTRAL DIVISION
- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                      :
CHRIS A. WILLIAMS,                                    :  Civil Action No.:
                                                      :
                              Plaintiff,              :  **COMPLAINT**
                                                      :
                   v.                                 :
                                                      :
HY-VEE, INC. and DOES 1-10,                           :
                                                      :
                              Defendants.             :
                                                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x
</pre>

Plaintiff Chris A. Williams, by and through his undersigned counsel, alleges as follows:

## INTRODUCTION

1. Few marketing opportunities exist that can rival the power of a commercial spot during the NFL Super Bowl. The Super Bowl's television audience is immense and notably diverse. Super Bowl commercials that succeed in creating memorable moments are widely discussed and circulated online to viewers far beyond the Super Bowl's original audience.

2. In 2019, the Des Moines-based grocery store chain Hy-Vee aired a Super Bowl commercial of its own.

3. The commercial promotes Hy-Vee's partnership with Oprah Winfrey's *O, That's Good!* brand. A sweeping 'feel-good spot,' complete with stirring music and a voice-over by Ms. Winfrey, the commercial follows a female protagonist from Des Moines as she grows from a young girl to a college graduate, fueled by "hard work and determination"—and products from "the generous folks at Hy-Vee."

4. As she navigates the city, the protagonist repeatedly passes in front of a large, vibrant mural. As a young girl on her way home from school, she runs past the mural in slow motion, glancing at it while she passes. And later, the now-older protagonist walks past the mural again before returning to give an apple to a homeless man, artfully centered in front of the mural, while the music poignantly stops then swells again.

5. That mural that frames these evocative scenes is a well-known work in Des Moines, painted by Des Moines artist Chris Williams. Mr. Williams owns the copyright and moral rights in the mural, and with them, the exclusive right to monetize his work.

6. Hy-Vee neither sought nor obtained Mr. Williams' permission to use his mural in its multi-million-dollar ad campaign. Mr. Williams's notices and demand letters to Hy-Vee were repeatedly rebuffed.

7. Mr. Williams now brings this action against Hy-Vee to vindicate his rights for copyright infringement under 17 U.S.C. § 101 *et seq.* (the Copyright Act), infringement of moral rights under 17 U.S.C. § 106A (the Visual Artists Rights Act, "VARA"), as well as alteration and removal of copyright management information under 17 U.S.C. § 1202 (the Digital Millennium Copyright Act).

## **THE PARTIES**

8. Plaintiff Chris A. Williams is an artist and muralist, known in the contemporary art world by his pseudonym CAW.

9. Defendant Hy-Vee, Inc. ("Hy-Vee") is an Iowa corporation headquartered in Des Moines that operates a multi-state retail grocery business with hundreds of locations across the Midwestern and Southern United States.

10. Defendants Does 1-10 are unknown individuals or entities who were engaged to act in concert with Hy-Vee, at Hy-Vee's direction and/or for Hy-Vee's benefit to produce and air the commercial. They are fictitiously named due to Mr. Williams's ignorance of their true names and capacities. Mr. Williams will amend this Complaint to allege the true names and capacities of these Defendants once they become known.

11. Each Defendant acted as an agent for and/or in concert with each of the other Defendants for the benefit of Hy-Vee in committing the acts alleged in this Complaint, and each Defendant ratified, benefited from and/or otherwise performed, made, or carried out the acts by the other Defendants so as to make them directly and vicariously liable to Mr. Williams for the conduct complained of herein.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1338(a)-(b) (patent, copyright, trademark and unfair competition jurisdiction) because this action arises under the laws of the United States and Acts of the United States Congress relating to copyrights and moral rights in works of visual art.

13. Venue lies in this District under 28 U.S.C. § 1391(b)(1)-(3) because Defendant Hy-Vee resides in this District and a substantial part of the events and omissions giving rise to the claims occurred here.

## GENERAL ALLEGATIONS

*Chris Williams and the Mural*

14. Plaintiff Chris Williams is a well-known contemporary artist who has participated in numerous gallery shows and art festivals. His work has been showcased in multiple venues

and featured in several print media publications, including the front page of the *Des Moines Register*, the leading newspaper in Iowa.

15. Mr. Williams was previously the youngest finalist for the mid-career McKnight public art grant, one of the largest art grants in the state of Minnesota.

16. In 2018, Mr. Williams created an original work of visual art (the "Mural") on a wall at the corner of Sixth and College Avenues, in the Riverbend neighborhood of Des Moines, as part of a community project called the 6th Avenue Corridor Revitalization Plan (the "Plan").

17. Plaintiff created the Mural under a contract with 6th Avenue Corridor. That contract expressly reserves to Mr. Williams all intellectual property and moral rights under the Copyright Act and VARA.

18. Mr. Williams registered the Mural with the United States Copyright Office on June 26, 2019 (Registration VAu001359660).

19. The Mural has garnered Mr. Williams significant attention and standing in his community and beyond. For example, a guide prepared by the Des Moines Area Public Transit Authority featured the Mural as one of the city's highlights.

20. The Mural won an award for best overall project in the area.

21. The Mural's purpose was both artistic and communal, serving as a focal point of the neighborhood and reflecting Plaintiff's pride in forming part of the local community.

*Hy-Vee's Commercial*

22. The 2019 NFL Super Bowl was held on February 3, 2019.

23. The original broadcast of that event is estimated to have been watched by about 100 million television viewers.

24. Hy-Vee released a commercial during the 2019 Super Bowl (the "Commercial").

25. The Commercial was commissioned by Hy-Vee and involved Does 1-10 in varying capacities.

26. A 30-second nationwide advertising spot during the event was estimated to cost $5.25 million.

27. The Commercial was 3 minutes and 46 seconds in length.

28. The Commercial promoted Hy-Vee's products and touted Hy-Vee's partnership with Oprah Winfrey's *O, That's Good!* brand, announcing that a portion of the proceeds from certain Hy-Vee products would be donated to help feed school children.

29. The Commercial depicts the journey of a young girl as she applies herself and grows from a young schoolgirl to a college graduate, fueled by Hy-Vee products.

30. As the young protagonist navigates the city on her way home from school, she first passes in front of the Mural at time stamp 1:10-1:16. The camera follows as the girl looks at the Mural and then runs in slow motion across its length.

31. The Mural appears again, at time stamp 2:59-3:08, as the girl—now a young woman—walks past the length of the Mural once more before returning to share an apple with a homeless man who is seated in front of the Mural.

32. As the camera lingers on the pair in front of the Mural, the musical accompaniment highlights the moment by pausing briefly before swelling again into the Commercial's conclusion.

33. The repetitive use of the Mural emphasizes the Advertisement's central narrative and underlying message of personal achievement and community.

34. The Commercial does not appear to alter the physical characteristics of the Mural in any way.

35. The Commercial depicts the Mural in substantially its entirety.

36. The Commercial depicts the Mural clearly and in full lighting.

37. The Commercial depicts the Mural head-on, with the Mural filling substantially the entire frame, as the camera pans across the Mural's full length, minus Williams's copyright information.

38. In fact, practically the only part of the Mural that is not visible during the Commercial is the lower-left corner—which bears Mr. Williams's signature and Instagram handle.

39. Hy-Vee never obtained Mr. Williams's permission to use the Mural in the Commercial, either in whole or in part.

*Additional and Continuing Acts of Infringement*

40. In addition to publishing it to millions of people on network television during the Super Bowl, Hy-Vee also distributed the Commercial online, including (but not limited to) on Hy-Vee's official social media accounts and YouTube channel.

41. A copy of the Commercial on Hy-Vee's Facebook page, for example, has been viewed over 14,000 times.

42. A still image from the Commercial that prominently features the Mural in the background was set as the thumbnail/cover of the video on Hy-Vee's social media channels.

43. The Commercial was also picked up by other outlets, including ABC News, and broadcast to their viewers either in whole or in part.

44. Nearly three years later, the Commercial remains publicly available online.

45. Hy-Vee and Does 1-10 have committed, aided, and abetted these continuing acts of infringement.

*Notice of Infringement*

46. Mr. Williams saw the Commercial during the 2019 Super Bowl and promptly notified Hy-Vee of its infringement.

47. Hy-Vee denied Mr. Williams's legal claims and failed to take any action to compensate Mr. Williams or to remove the Commercial from public circulation.

48. Before filing this action, Mr. Williams's counsel sent another notice and demand to Hy-Vee's counsel, which Hy-Vee summarily rejected.

49. Upon information and belief, Hy-Vee's purpose in disseminating the Commercial was, in whole or in part, to engage customers, increase revenue, and strengthen Hy-Vee's brand.

50. Upon information and belief, the Commercial succeeded—and continues to succeed—in providing monetary and non-monetary commercial benefits to Hy-Vee.

51. Hy-Vee possessed the relevant information and resources to ascertain the identity of the Mural's author (Mr. Williams) and to seek a license to incorporate the Mural into the Commercial.

52. Instead, Hy-Vee chose to profit from Mr. Williams's intellectual property without obtaining a license and without crediting Mr. Williams as the law requires.

53. Upon information and belief, Hy-Vee benefitted from the Mural's infringement in numerous ways, such as increased sales and digital impressions generated by the Commercial as well as increasing the value, image, and positioning of Hy-Vee's brand through its association with Mr. Williams and his artwork.

54. As a direct result of Hy-Vee's misconduct, Mr. Williams has suffered real and ongoing damages, including lost revenue in the form of licensing opportunities, reputational damage, and the diminished value of his work.

55. Hy-Vee's conduct was or has now become intentional, deliberate, willful, and wanton, entitling Mr. Williams to an award of punitive or exemplary damages.

### FIRST CLAIM FOR RELIEF FOR COPYRIGHT INFRINGEMENT UNDER THE COPYRIGHT ACT (17 U.S.C. §101 *et seq.*)

56. Mr. Williams re-alleges and incorporates herein by reference all prior paragraphs as if set forth in full in this cause of action.

57. Mr. Williams' Mural is an original work of visual art fixed in a tangible medium of expression that is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration.

58. The Mural was thus entitled to copyright protections from the moment of its creation.

59. Mr. Williams possesses a registered U.S. copyright in the Mural.

60. Hy-Vee copied, displayed, distributed, and made derivative works of the Mural without Mr. Williams's authorization, in violation of 17 U.S.C. § 501.

61. Hy-Vee infringed Mr. Williams's rights despite having easy access to Mr. Williams's identity and contact information, which would have allowed Hy-Vee to seek a proper license.

62. Even after Mr. Williams timely protested this unauthorized use and placed Hy-Vee on notice of their infringement, Hy-Vee has continued to infringe Mr. Williams's rights by failing to remove the Commercial from public circulation.

63. As a direct result of Hy-Vee's infringement, Mr. Williams has suffered and will continue to suffer substantial damage, in amounts that are not yet ascertainable but that in any event exceed the jurisdictional minimum of this Court.

64. Hy-Vee is liable to Mr. Williams for the actual damages he incurred as a result of their infringement, as well as any profits that they have derived, whether directly or indirectly, that are attributable to such infringement.

65. Mr. Williams is entitled to the maximum amount of statutory damages **($150,000)** for each instance of copyright infringement as the result of Hy-Vee and Does 1-10's willful behavior.

## SECOND CLAIM FOR RELIEF FOR MORAL RIGHTS INFRINGEMENT UNDER VARA (17 U.S.C. §106A)

66. Mr. Williams re-alleges and incorporates herein by reference all prior paragraphs as if set forth in full in this cause of action.

67. In addition to the rights and protections conferred by the Copyright Act, VARA entitles visual artists who create works after 1990 to attribution for their work and empowers them to protect the artistic integrity of their creations.

68. The Mural qualifies for VARA protection because it is fixed in a tangible medium of expression and can be perceived for a period of more than transitory duration.

69. Under VARA, Mr. Williams's approval was required before Hy-Vee used the Mural in the Commercial.

70. Under VARA, Mr. Williams was entitled to receive credit in the Commercial for his authorship of the Mural.

71. Mr. Williams has not waived his rights under VARA and has, in fact, expressly reserved those rights to himself.

72. Hy-Vee never sought Mr. Williams's permission to use the Mural.

73. Hy-Vee did not credit Mr. Williams in the Commercial as the author of the Mural.

9

74. Even after Mr. Williams timely protested this unauthorized use and placed Hy-Vee on notice of their infringement, Hy-Vee has continued to infringe Mr. Williams's moral rights by failing to credit him as the author of the Mural and by failing to remove the Commercial from public circulation.

75. Hy-Vee is liable to Mr. Williams for the actual damages he incurred as a result of Hy-Vee's infringement, as well as any profits that they derived and continue to derive, whether directly or indirectly, that are attributable to their infringement.

76. Mr. Williams may be entitled to the maximum amount of statutory damages **($150,000)** for each instance of moral rights infringement as the result of Hy-Vee and Does 1-10's willful behavior.

### THIRD CLAIM FOR RELIEF FOR REMOVAL OF COPYRIGHT MANAGEMENT INFORMATION IN VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT (17 U.S.C. §1202(b))

77. Mr. Williams re-alleges and incorporates herein by reference all prior paragraphs as if set forth in full in this cause of action.

78. Mr. Williams prominently signed the Mural in the lower left corner using his artistic moniker, "CAW."

79. Mr. Williams also included his Instagram handle "@KingCAW" on the lower left of the Mural.

80. In the Commercial, Hy-Vee cropped the images of the Mural to remove Mr. Williams's signature and contact information.

81. Upon information and belief, Hy-Vee removed or altered this copyright management information with the intent to induce, enable, facilitate, or conceal an infringement of Mr. Williams's rights under the Copyright Act, in violation of 17 U.S.C. §1202(b).

82. Hy-Vee's omission of valid copyright management information was made without Mr. Williams's knowledge or consent.

83. Upon information and belief, Hy-Vee's removal of copyright information was done knowingly, intentionally, and with the intent to conceal their infringement of Mr. Williams's copyright in the Mural.

84. Upon information and belief, Hy-Vee also knew, or had reason to know, that such omission of copyright information would conceal their infringement of Mr. Williams's copyright in the Mural.

85. Under 17 U.S.C. §1203(c)(2), Hy-Vee and Does 1-10 are liable to Mr. Williams for the actual damages he incurred as a result of their infringement, as well as any profits that Hy-Vee and Does 1-10 have derived, whether directly or indirectly, that are attributable to such infringement.

86. Alternatively, Hy-Vee and Does 1-10 are liable to Mr. Williams for the maximum amount of statutory damages under 17 U.S.C. §1203(c)(3) (**$25,000** per violation).

## DAMAGES

87. Mr. Williams re-alleges and incorporates herein by reference all prior paragraphs as if set forth in full in this cause of action.

88. As a direct result of Hy-Vee and Does 1-10's acts and omissions, as described above, Mr. Williams has sustained significant injury as well as monetary damages.

89. Mr. Williams is currently unable to ascertain the full extent of the monetary damages suffered by reason of said acts. To determine the full extent of such damages, including Hy-Vee and Does 1-10's profits as may be recoverable under 17 U.S.C. §1203, Mr. Williams will require an accounting from Hy-Vee and Does 1-10 of all monies generated

from their wrongful falsification, removal, and alteration of copyright management information.

90. In the alternative, due to the willful and deliberate nature of Hy-Vee and Does 1-10's acts, Mr. Williams requests the maximum amount of statutory damages for each violation of 17 U.S.C. § 101 *et seq.* and 17 U.S.C. § 106A: **one hundred and fifty thousand dollars ($150,000) per instance** of infringement.

91. Mr. Williams was deprived of his legal right to demand a licensing fee for the commercial use of his work. He is currently unable to ascertain the full extent of the monetary damages suffered by reason of said acts. To determine the full extent of such damages, including Hy-Vee and Does 1-10's profits as may be recoverable under the Copyright Act, Mr. Williams will require an accounting from Hy-Vee and Does 1-10 of all monies generated from their wrongful appropriation, use, reproduction, and dissemination of the Mural.

92. Due to Hy-Vee and Does 1-10's intent to appropriate the Mural, their removal of Mr. Williams's signature from the Mural, their negligence in acquiring Mr. Williams's consent for the use of his copyrighted material, and the continuing and callous nature of Hy-Vee and Does 1-10's acts and their potential to undermine artists' legal copyright protection and set an objectionable precedent, Mr. Williams respectfully requests punitive damages sufficient to deter such conduct, in an amount to be determined by this Court which should take into account the substantial viewership of the Commercial as well as the profits derived therefrom by Hy-Vee and Does 1-10.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1. That Mr. Williams is awarded all damages, including future damages, that he has sustained, or will sustain, due to the acts complained herein (subject to proof at trial);
2. That Mr. Williams is awarded his costs, attorneys' fees, and expenses in this action;
3. That Mr. Williams is awarded pre-judgment interest;
4. That Hy-Vee and Does 1-10 be ordered to immediately recall and remove all copies of the Commercial and all infringing derivatives thereof from all remaining locations, physical or digital;
5. That Hy-Vee and Does 1-10 be ordered to file with this Court and serve upon Mr. Williams's counsel within thirty (30) days after services of the judgment demanded herein, a written report submitted under oath setting forth in detail the manner in which they have complied with the judgment;
6. For disgorgement of all proceeds, and restitution of the moneys wrongfully received by Hy-Vee as the result of their wrongful conduct;
7. For punitive damages in an amount sufficient to deter Hy-Vee and Does 1-10 from their wrongful conduct; and
8. For such other and further relief as the Court may deem just and proper.

Date: February 3, 2022

_____
Jeffrey L. Goodman, AT0002992
GOODMAN/KELLER P.C.
1501 42nd Street, Suite 300
West Des Moines, IA 50266
Telephone: 515-267-8600
Facsimile: 515-224-2075
jeff@golawpc.com

ATTORNEY FOR PLAINTIFF