IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA CENTRAL DIVISION

| | |
|---|---|
| CHRIS A. WILLIAMS,<br><br>     Plaintiff,<br><br>vs.<br><br>HY-VEE, INC. and DOES 1–10,<br><br>     Defendants. | No. 4:22-cv-25<br><br>DEFENDANT HY-VEE, INC.'S APPENDIX IN SUPPORT OF HY-VEE'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

**Table of Contents**

| Exhibit | Description | Page |
|---|---|---|
| 1 | Plaintiff Chris A. Williams's Complaint (Dkt. 1) | App. 001–004 |
| 2 | Image of Mural | App. 014 |
| 3 | Commission Agreement | App. 015–017 |
| 4 | Placeholder for 60-second Promotion | App. 018 |
| 5 | Placeholder for 180-second Promotion | App. 019 |
| 6 | Facebook Messages between Chris A. Williams and Hy-Vee | App. 020 |
| 7 | Des Moines Register News Article | App. 021–024 |
| 8 | Artnet News Article | App. 025–026 |
| 9 | Complaint for Copyright Infringement (2:19-cv-06671) | App. 027–038 |
| 10 | Notice of Voluntary Dismissal Without Prejudice (2:19-cv-06671) | App. 039–040 |
| 11 | Copyright Office's Public Catalog of Registration VAu001359660 | App. 041 |
| 12 | Portion of Hy-Vee One Step® Webpage | App. 042–044 |
| 13 | Declaration of Joshua J. Conley | App. 045–046 |

//

//

//

//

Respectfully submitted,

Dated: May 17, 2022        **ZARLEY LAW FIRM, P.LC.**

By:    /s/Joshua J. Conley
         Joshua J. Conley. AT0011828
         Timothy J. Zarley, AT0008650
         John D. Gilbertson, AT0014515
         400 Locust Street
         Capital Square, Suite 200
         Des Moines, IA 50309-2350
         Telephone:  (515) 558-0200
         Facsimile:   (515) 558-7790
         jconley@zarleylaw.com
         tzarley@zarleylaw.com
         jgilbertson@zarleylaw.com
         **ATTORNEY FOR HY-VEE, INC.**

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                   :

CHRIS A. WILLIAMS,             :     Civil Action No.:

                     Plaintiff,   :     **COMPLAINT**

                         v.         :

HY-VEE, INC. and DOES 1-10,   :

                   Defendants.   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Plaintiff Chris A. Williams, by and through his undersigned counsel, alleges as follows:

<u>**INTRODUCTION**</u>

1. Few marketing opportunities exist that can rival the power of a commercial spot during the NFL Super Bowl. The Super Bowl's television audience is immense and notably diverse. Super Bowl commercials that succeed in creating memorable moments are widely discussed and circulated online to viewers far beyond the Super Bowl's original audience.

2. In 2019, the Des Moines-based grocery store chain Hy-Vee aired a Super Bowl commercial of its own.

3. The commercial promotes Hy-Vee's partnership with Oprah Winfrey's *O, That's Good!* brand. A sweeping 'feel-good spot,' complete with stirring music and a voice-over by Ms. Winfrey, the commercial follows a female protagonist from Des Moines as she grows from a young girl to a college graduate, fueled by "hard work and determination"—and products from "the generous folks at Hy-Vee."

1

**EXHIBIT**

**1**

App. 001

App. 002

4.  As she navigates the city, the protagonist repeatedly passes in front of a large, vibrant mural. As a young girl on her way home from school, she runs past the mural in slow motion, glancing at it while she passes. And later, the now-older protagonist walks past the mural again before returning to give an apple to a homeless man, artfully centered in front of the mural, while the music poignantly stops then swells again.

5.  That mural that frames these evocative scenes is a well-known work in Des Moines, painted by Des Moines artist Chris Williams. Mr. Williams owns the copyright and moral rights in the mural, and with them, the exclusive right to monetize his work.

6.  Hy-Vee neither sought nor obtained Mr. Williams' permission to use his mural in its multi-million-dollar ad campaign. Mr. Williams's notices and demand letters to Hy-Vee were repeatedly rebuffed.

7.  Mr. Williams now brings this action against Hy-Vee to vindicate his rights for copyright infringement under 17 U.S.C. § 101 *et seq.* (the Copyright Act), infringement of moral rights under 17 U.S.C. § 106A (the Visual Artists Rights Act, "VARA"), as well as alteration and removal of copyright management information under 17 U.S.C. § 1202 (the Digital Millennium Copyright Act).

## THE PARTIES

8.  Plaintiff Chris A. Williams is an artist and muralist, known in the contemporary art world by his pseudonym CAW.

9.  Defendant Hy-Vee, Inc. ("Hy-Vee") is an Iowa corporation headquartered in Des Moines that operates a multi-state retail grocery business with hundreds of locations across the Midwestern and Southern United States.

App. 002

10. Defendants Does 1-10 are unknown individuals or entities who were engaged to act in concert with Hy-Vee, at Hy-Vee's direction and/or for Hy-Vee's benefit to produce and air the commercial. They are fictitiously named due to Mr. Williams's ignorance of their true names and capacities. Mr. Williams will amend this Complaint to allege the true names and capacities of these Defendants once they become known.

11. Each Defendant acted as an agent for and/or in concert with each of the other Defendants for the benefit of Hy-Vee in committing the acts alleged in this Complaint, and each Defendant ratified, benefited from and/or otherwise performed, made, or carried out the acts by the other Defendants so as to make them directly and vicariously liable to Mr. Williams for the conduct complained of herein.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1338(a)-(b) (patent, copyright, trademark and unfair competition jurisdiction) because this action arises under the laws of the United States and Acts of the United States Congress relating to copyrights and moral rights in works of visual art.

13. Venue lies in this District under 28 U.S.C. § 1391(b)(1)-(3) because Defendant Hy-Vee resides in this District and a substantial part of the events and omissions giving rise to the claims occurred here.

## GENERAL ALLEGATIONS

### *Chris Williams and the Mural*

14. Plaintiff Chris Williams is a well-known contemporary artist who has participated in numerous gallery shows and art festivals. His work has been showcased in multiple venues

3

and featured in several print media publications, including the front page of the *Des Moines Register*, the leading newspaper in Iowa.

15. Mr. Williams was previously the youngest finalist for the mid-career McKnight public art grant, one of the largest art grants in the state of Minnesota.

16. In 2018, Mr. Williams created an original work of visual art (the "Mural") on a wall at the corner of Sixth and College Avenues, in the Riverbend neighborhood of Des Moines, as part of a community project called the 6th Avenue Corridor Revitalization Plan (the "Plan").

17. Plaintiff created the Mural under a contract with 6th Avenue Corridor. That contract expressly reserves to Mr. Williams all intellectual property and moral rights under the Copyright Act and VARA.

18. Mr. Williams registered the Mural with the United States Copyright Office on June 26, 2019 (Registration VAu001359660).

19. The Mural has garnered Mr. Williams significant attention and standing in his community and beyond. For example, a guide prepared by the Des Moines Area Public Transit Authority featured the Mural as one of the city's highlights.

20. The Mural won an award for best overall project in the area.

21. The Mural's purpose was both artistic and communal, serving as a focal point of the neighborhood and reflecting Plaintiff's pride in forming part of the local community.

*Hy-Vee's Commercial*

22. The 2019 NFL Super Bowl was held on February 3, 2019.

23. The original broadcast of that event is estimated to have been watched by about 100 million television viewers.

24. Hy-Vee released a commercial during the 2019 Super Bowl (the "Commercial").

25. The Commercial was commissioned by Hy-Vee and involved Does 1-10 in varying capacities.

26. A 30-second nationwide advertising spot during the event was estimated to cost $5.25 million.

27. The Commercial was 3 minutes and 46 seconds in length.

28. The Commercial promoted Hy-Vee's products and touted Hy-Vee's partnership with Oprah Winfrey's *O, That's Good!* brand, announcing that a portion of the proceeds from certain Hy-Vee products would be donated to help feed school children.

29. The Commercial depicts the journey of a young girl as she applies herself and grows from a young schoolgirl to a college graduate, fueled by Hy-Vee products.

30. As the young protagonist navigates the city on her way home from school, she first passes in front of the Mural at time stamp 1:10-1:16. The camera follows as the girl looks at the Mural and then runs in slow motion across its length.

31. The Mural appears again, at time stamp 2:59-3:08, as the girl—now a young woman—walks past the length of the Mural once more before returning to share an apple with a homeless man who is seated in front of the Mural.

32. As the camera lingers on the pair in front of the Mural, the musical accompaniment highlights the moment by pausing briefly before swelling again into the Commercial's conclusion.

33. The repetitive use of the Mural emphasizes the Advertisement's central narrative and underlying message of personal achievement and community.

34. The Commercial does not appear to alter the physical characteristics of the Mural in any way.

35. The Commercial depicts the Mural in substantially its entirety.

36. The Commercial depicts the Mural clearly and in full lighting.

37. The Commercial depicts the Mural head-on, with the Mural filling substantially the entire frame, as the camera pans across the Mural's full length, minus Williams's copyright information.

38. In fact, practically the only part of the Mural that is not visible during the Commercial is the lower-left corner—which bears Mr. Williams's signature and Instagram handle.

39. Hy-Vee never obtained Mr. Williams's permission to use the Mural in the Commercial, either in whole or in part.

*Additional and Continuing Acts of Infringement*

40. In addition to publishing it to millions of people on network television during the Super Bowl, Hy-Vee also distributed the Commercial online, including (but not limited to) on Hy-Vee's official social media accounts and YouTube channel.

41. A copy of the Commercial on Hy-Vee's Facebook page, for example, has been viewed over 14,000 times.

42. A still image from the Commercial that prominently features the Mural in the background was set as the thumbnail/cover of the video on Hy-Vee's social media channels.

43. The Commercial was also picked up by other outlets, including ABC News, and broadcast to their viewers either in whole or in part.

44. Nearly three years later, the Commercial remains publicly available online.

45. Hy-Vee and Does 1-10 have committed, aided, and abetted these continuing acts of infringement.

*Notice of Infringement*

46. Mr. Williams saw the Commercial during the 2019 Super Bowl and promptly notified Hy-Vee of its infringement.

47. Hy-Vee denied Mr. Williams's legal claims and failed to take any action to compensate Mr. Williams or to remove the Commercial from public circulation.

48. Before filing this action, Mr. Williams's counsel sent another notice and demand to Hy-Vee's counsel, which Hy-Vee summarily rejected.

49. Upon information and belief, Hy-Vee's purpose in disseminating the Commercial was, in whole or in part, to engage customers, increase revenue, and strengthen Hy-Vee's brand.

50. Upon information and belief, the Commercial succeeded—and continues to succeed—in providing monetary and non-monetary commercial benefits to Hy-Vee.

51. Hy-Vee possessed the relevant information and resources to ascertain the identity of the Mural's author (Mr. Williams) and to seek a license to incorporate the Mural into the Commercial.

52. Instead, Hy-Vee chose to profit from Mr. Williams's intellectual property without obtaining a license and without crediting Mr. Williams as the law requires.

53. Upon information and belief, Hy-Vee benefitted from the Mural's infringement in numerous ways, such as increased sales and digital impressions generated by the Commercial as well as increasing the value, image, and positioning of Hy-Vee's brand through its association with Mr. Williams and his artwork.

54. As a direct result of Hy-Vee's misconduct, Mr. Williams has suffered real and ongoing damages, including lost revenue in the form of licensing opportunities, reputational damage, and the diminished value of his work.

App. 007

55. Hy-Vee's conduct was or has now become intentional, deliberate, willful, and wanton, entitling Mr. Williams to an award of punitive or exemplary damages.

## FIRST CLAIM FOR RELIEF FOR COPYRIGHT INFRINGEMENT
## UNDER THE COPYRIGHT ACT (17 U.S.C. §101 *et seq.*)

56. Mr. Williams re-alleges and incorporates herein by reference all prior paragraphs as if set forth in full in this cause of action.

57. Mr. Williams' Mural is an original work of visual art fixed in a tangible medium of expression that is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration.

58. The Mural was thus entitled to copyright protections from the moment of its creation.

59. Mr. Williams possesses a registered U.S. copyright in the Mural.

60. Hy-Vee copied, displayed, distributed, and made derivative works of the Mural without Mr. Williams's authorization, in violation of 17 U.S.C. § 501.

61. Hy-Vee infringed Mr. Williams's rights despite having easy access to Mr. Williams's identity and contact information, which would have allowed Hy-Vee to seek a proper license.

62. Even after Mr. Williams timely protested this unauthorized use and placed Hy-Vee on notice of their infringement, Hy-Vee has continued to infringe Mr. Williams's rights by failing to remove the Commercial from public circulation.

63. As a direct result of Hy-Vee's infringement, Mr. Williams has suffered and will continue to suffer substantial damage, in amounts that are not yet ascertainable but that in any event exceed the jurisdictional minimum of this Court.

App. 008

64. Hy-Vee is liable to Mr. Williams for the actual damages he incurred as a result of their infringement, as well as any profits that they have derived, whether directly or indirectly, that are attributable to such infringement.

65. Mr. Williams is entitled to the maximum amount of statutory damages **($150,000)** for each instance of copyright infringement as the result of Hy-Vee and Does 1-10's willful behavior.

## SECOND CLAIM FOR RELIEF FOR MORAL RIGHTS INFRINGEMENT UNDER VARA (17 U.S.C. §106A)

66. Mr. Williams re-alleges and incorporates herein by reference all prior paragraphs as if set forth in full in this cause of action.

67. In addition to the rights and protections conferred by the Copyright Act, VARA entitles visual artists who create works after 1990 to attribution for their work and empowers them to protect the artistic integrity of their creations.

68. The Mural qualifies for VARA protection because it is fixed in a tangible medium of expression and can be perceived for a period of more than transitory duration.

69. Under VARA, Mr. Williams's approval was required before Hy-Vee used the Mural in the Commercial.

70. Under VARA, Mr. Williams was entitled to receive credit in the Commercial for his authorship of the Mural.

71. Mr. Williams has not waived his rights under VARA and has, in fact, expressly reserved those rights to himself.

72. Hy-Vee never sought Mr. Williams's permission to use the Mural.

73. Hy-Vee did not credit Mr. Williams in the Commercial as the author of the Mural.

74. Even after Mr. Williams timely protested this unauthorized use and placed Hy-Vee on notice of their infringement, Hy-Vee has continued to infringe Mr. Williams's moral rights by failing to credit him as the author of the Mural and by failing to remove the Commercial from public circulation.

75. Hy-Vee is liable to Mr. Williams for the actual damages he incurred as a result of Hy-Vee's infringement, as well as any profits that they derived and continue to derive, whether directly or indirectly, that are attributable to their infringement.

76. Mr. Williams may be entitled to the maximum amount of statutory damages **($150,000)** for each instance of moral rights infringement as the result of Hy-Vee and Does 1-10's willful behavior.

### THIRD CLAIM FOR RELIEF FOR REMOVAL OF COPYRIGHT MANAGEMENT INFORMATION IN VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT (17 U.S.C. §1202(b))

77. Mr. Williams re-alleges and incorporates herein by reference all prior paragraphs as if set forth in full in this cause of action.

78. Mr. Williams prominently signed the Mural in the lower left corner using his artistic moniker, "CAW."

79. Mr. Williams also included his Instagram handle "@KingCAW" on the lower left of the Mural.

80. In the Commercial, Hy-Vee cropped the images of the Mural to remove Mr. Williams's signature and contact information.

81. Upon information and belief, Hy-Vee removed or altered this copyright management information with the intent to induce, enable, facilitate, or conceal an infringement of Mr. Williams's rights under the Copyright Act, in violation of 17 U.S.C. §1202(b).

10

82. Hy-Vee's omission of valid copyright management information was made without Mr. Williams's knowledge or consent.

83. Upon information and belief, Hy-Vee's removal of copyright information was done knowingly, intentionally, and with the intent to conceal their infringement of Mr. Williams's copyright in the Mural.

84. Upon information and belief, Hy-Vee also knew, or had reason to know, that such omission of copyright information would conceal their infringement of Mr. Williams's copyright in the Mural.

85. Under 17 U.S.C. §1203(c)(2), Hy-Vee and Does 1-10 are liable to Mr. Williams for the actual damages he incurred as a result of their infringement, as well as any profits that Hy-Vee and Does 1-10 have derived, whether directly or indirectly, that are attributable to such infringement.

86. Alternatively, Hy-Vee and Does 1-10 are liable to Mr. Williams for the maximum amount of statutory damages under 17 U.S.C. §1203(c)(3) (**$25,000** per violation).

## <u>DAMAGES</u>

87. Mr. Williams re-alleges and incorporates herein by reference all prior paragraphs as if set forth in full in this cause of action.

88. As a direct result of Hy-Vee and Does 1-10's acts and omissions, as described above, Mr. Williams has sustained significant injury as well as monetary damages.

89. Mr. Williams is currently unable to ascertain the full extent of the monetary damages suffered by reason of said acts. To determine the full extent of such damages, including Hy-Vee and Does 1-10's profits as may be recoverable under 17 U.S.C. §1203, Mr. Williams will require an accounting from Hy-Vee and Does 1-10 of all monies generated

11

from their wrongful falsification, removal, and alteration of copyright management information.

90. In the alternative, due to the willful and deliberate nature of Hy-Vee and Does 1-10's acts, Mr. Williams requests the maximum amount of statutory damages for each violation of 17 U.S.C. § 101 *et seq.* and 17 U.S.C. § 106A: **one hundred and fifty thousand dollars ($150,000) per instance** of infringement.

91. Mr. Williams was deprived of his legal right to demand a licensing fee for the commercial use of his work. He is currently unable to ascertain the full extent of the monetary damages suffered by reason of said acts. To determine the full extent of such damages, including Hy-Vee and Does 1-10's profits as may be recoverable under the Copyright Act, Mr. Williams will require an accounting from Hy-Vee and Does 1-10 of all monies generated from their wrongful appropriation, use, reproduction, and dissemination of the Mural.

92. Due to Hy-Vee and Does 1-10's intent to appropriate the Mural, their removal of Mr. Williams's signature from the Mural, their negligence in acquiring Mr. Williams's consent for the use of his copyrighted material, and the continuing and callous nature of Hy-Vee and Does 1-10's acts and their potential to undermine artists' legal copyright protection and set an objectionable precedent, Mr. Williams respectfully requests punitive damages sufficient to deter such conduct, in an amount to be determined by this Court which should take into account the substantial viewership of the Commercial as well as the profits derived therefrom by Hy-Vee and Does 1-10.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

App. 012

1. That Mr. Williams is awarded all damages, including future damages, that he has sustained, or will sustain, due to the acts complained herein (subject to proof at trial);

2. That Mr. Williams is awarded his costs, attorneys' fees, and expenses in this action;

3. That Mr. Williams is awarded pre-judgment interest;

4. That Hy-Vee and Does 1-10 be ordered to immediately recall and remove all copies of the Commercial and all infringing derivatives thereof from all remaining locations, physical or digital;

5. That Hy-Vee and Does 1-10 be ordered to file with this Court and serve upon Mr. Williams's counsel within thirty (30) days after services of the judgment demanded herein, a written report submitted under oath setting forth in detail the manner in which they have complied with the judgment;

6. For disgorgement of all proceeds, and restitution of the moneys wrongfully received by Hy-Vee as the result of their wrongful conduct;

7. For punitive damages in an amount sufficient to deter Hy-Vee and Does 1-10 from their wrongful conduct; and

8. For such other and further relief as the Court may deem just and proper.

Date:   February 3, 2022

Jeffrey L. Goodman, AT0002992
GOODMAN/KELLER P.C.
1501 42nd Street, Suite 300
West Des Moines, IA  50266
Telephone:  515-267-8600
Facsimile:  515-224-2075
jeff@golawpc.com

ATTORNEY FOR PLAINTIFF

13



EXHIBIT

**2**

## COMMISSION AGREEMENT

Agreement made this 5th day of October, 2018,

Between Christoper Williams (hereinafter called "the Artist", residing at:

118 SE 4th St Suite 101a, Des Moines, Iowa 50309

and the 6th Avenue Corridor (hereinafter called "the Purchaser"), residing at:

1717 6th Avenue, Des Moines, Iowa 50314

WITNESSETH THAT,

**WHEREAS,** the Artist is a recognized professional artist.

**WHEREAS,** the Purchaser acknowledges sufficient familiarity with the style and quality of the work of the Artist.

**WHEREAS,** the Purchaser desires the Artist to create a work of art (hereinafter called "the Work") in the Artist's unique style.

**NOW, THEREFORE,** in consideration of the mutual covenants hereinafter contained the parties hereto agree as follows.

1.  **DESCRIPTION OF WORK.** The Artist shall create the following work of art:

Title: MAZE mural

Materials: Paint

Approximate size upon completion: 30 x 12'

Description of the Artwork: abstract Mural

**Scope of the Artist's Work:**

It is hereby understood and agreed that it may not be possible to create the Work exactly as described herein or as depicted in preliminary designs, and the Artist shall only be bound to use his/her best aesthetic judgement to create the Work according to the style and intent of the design. The Artist is hereby free to make design modifications as the Work progresses as long as the Purchaser is notified and allowed input.

2.  **PRICE AND PAYMENT SCHEDULE.** The Artist shall sell the Work to the Purchaser, subject to the conditions herein, for a price of **$3,500**, payable as follows:

ONE HALF, $1,750, upon the execution of this agreement;

THE BALANCE, $1,750, upon Artist's giving notification that Work is completed.

**EXHIBIT 3**

3. **DATE OF COMPLETION:** The Artist agrees to complete the Work on or before November 15, 2018. The work should be in visible progress by October 20, 2018.

   a. The completion date shall also be extended in the event of delays caused by events beyond the control of the Artist, including but not limited to fire, thefts, strikes, shortage of materials, weather, and Acts of God.

   b. The Artist will immediately notify the Purchaser of any delays occurring or anticipated.

   c. Completion of the Work is to be determined by the Artist who shall use his/her professional judgement to deviate from any preliminary designs as he/she in good faith believes necessary to create the Work.

4. **INSURANCE, SHIPPING, AND INSTALLATION:** The Artist agrees to keep the Work fully insurance, as necessary, against fire and theft until installation, if applicable. In the event of a loss caused by fire or theft, the Artist shall use insurance proceeds to recommence the making of the Work.

   a. Upon completion, the Work shall be delivered at the expense of the Artist.

   b. Installation will be arranged and paid for as part of the Artist's fees.

5. **TERMINATION:** This Agreement may be terminated on the following conditions:

   a. The Purchaser shall have the right to terminate this Agreement if the Artist fails without cause to complete the Work by the completion date in Section 3. In the event of termination pursuant to this subparagraph, the Artist shall return to the Purchaser all payments made pursuant to Section 2, but shall not be liable for any additional expenses, damages, or claims of any kind based on the failure to complete the work.

   b. If the Purchaser does not find the Work as it progresses filling her expectations or needs and therefore wishes to terminate the Agreement, Purchaser shall immediately notify the Artist of the termination. The Artist shall thereupon be entitled to retain all payments which Artist has received up to that point.

   c. The Artist shall have the right to terminate this Agreement in the event the Purchaser is more than sixty (60) days late in making any payment due pursuant to Section 2, provided, however, that nothing herein shall prevent the Artist bringing suit based on the Purchaser's breach of contract.

   d. This Agreement shall automatically terminate on the death of the Artist, provided however, that the Artist's estate shall retain all payments made pursuant to Section 2.

   e. The exercise of the right of termination under this Paragraph shall be written and set forth the grounds for termination.

6. **OWNERSHIP:** Title to the Work shall remain in the Artist until Artist is paid in full.

   a. In the event of termination of this Agreement pursuant to Subparagraphs a, b, c, and d of Section 5, the Artist shall retain all rights of ownership in the concept, design, and Work itself, including the right to complete, exhibit, and sell the Work unless the Work is directly painted onto a surface of a building which the Artist does not own.

   b. Once the final payment has been made, ownership of the Work transfers to the Purchaser. If a building upon which the Work is installed is not owned by the Purchaser, ownership of the Work transfers to the building owner. Purchaser and/or building owner may not copyright, reproduce, or merchandise images of the Work without the Artist's written consent in advance.

7. **ARTIST'S RIGHTS:** The Purchaser will not permit any use of the Artist's name or misuse of the Work which would reflect discredit on his/her reputation as an artist or which would violate the spirit of the Work.

2 | P a g e

8. **DISAGREEMENT/ARBITRATION:** The parties hereby agree and consent that the laws of Iowa shall govern the contract and the Polk County District Court shall have jurisdiction.

9. **NO WAIVER:** No waiver of full performance by either party shall be construed or operate as a waiver of any subsequent default of any of the terms, covenants, and conditions of this agreement.

10. **NO ASSIGNMENT OR TRANSFER:** Neither party hereto shall have the right to assign or transfer this agreement without the prior written consent of the other party. The Artists shall, however, retain the right to assign any payments provided for by this agreement.

11. **HEIRS AND ASSIGNS:** This agreement shall be binding upon the parties hereto, their heirs, successors, assigns, and personal representatives, and references to the Artist and the Purchaser shall include their heirs, successors, assigns, and personal representatives.

12. **SEVERABILITY:** If any part of this Agreement is held to be illegal, void, or unenforceable for any reason, such holding shall not affect the validity and enforceability of any other part.

13. **ENTIRE AGREEMENT:** This agreement contains all the covenants, promises, agreements, and conditions, either oral or written, between the parties, and may not be changed or modified except in writing signed by authorized representatives of the parties hereto.

14. **GOVERNING LAWS:** The validity of this agreement and of any of its terms, as well as the rights and duties of the parties under this agreement, shall be governed by the laws of the State of Iowa.

IN WITNESS WHEREOF the parties have hereunto set their hands.

BY _____
ARTIST

Date ___10 – 19 / 18___

BY ___Breann Bye 6th Avenue___
PURCHASER

Date ___10.19.2018___

(PLACEHOLDER FOR 60-SECOND PROMOTION)

**EXHIBIT**

**4**

(PLACEHOLDER FOR 226-SECOND PROMOTION)

**EXHIBIT**

**5**

You probably spent millions of dollars on this ad and don't think using an artist work for commercial purposes is a big deal ? Hy-Vee and oprah and all the millionaires and billionaires need to pay up I'm poor as hell and y'all using my bright colors and beauty without giving me a penny ? Ahhh helll naw .



Hy-Vee added a new video.

If you were watching the big game this evening, you may have seen a commercial about how Hy-Vee is helping to bring comfort to hungry children around the Midwest. See how we are teaming up with O, Tha...
Hy-Vee



7:13 AM

Good Morning, if you could please provide us with more information, we'd be happy to look into this further.

Sent by Tierney Israel [Y]

**EXHIBIT**

**6**

EXHIBIT

7

App. 021

# Des Moines **Register**

BUSINESS

# Who owns public art? Des Moines artist sues Hy-Vee for using his mural in Super Bowl ad



**Linh Ta**
The Des Moines Register
Published 9:59 p.m. CT Aug. 25, 2019

Chris Williams was shocked when he learned that his mural was part of a Super Bowl commercial earlier this year.

The 35-year-old Des Moines artist painted the colorful collection on squares and rectangles at Sixth and College Avenues in 2018. It was part of a community project in the Riverbend neighborhood.

Williams said no one sought permission to use the mural, and Hy-Vee, which ran the ad, did not give him credit or compensation.

He is now suing Hy-Vee for copyright infringement.

"I felt very confused about seeing my art being used by Hy-Vee on a presumably multi-million dollar television commercial," Williams said in a statement.

The advertisement, narrated by Oprah Winfrey, highlighted a partnership between Hy-Vee and Oprah's O, That's Good! brand. Sixteen cents from the purchase of every O, That's Good! product that included Hy-Vee's One Step label went to fill backpacks for children dealing with hunger.

Williams' mural appeared twice in the commercial. First, when a school-age girl carrying a backpack runs past it, and again when the now older girl hands a homeless man an apple — an homage back to the nutrition and hunger message.

"It felt ironic listening to Oprah talk about hopes and dreams while watching her seemingly exploit my own creative energy, my own hopes and dreams, without even recognizing me," Williams said.

Hy-Vee declined to comment, citing litigation.

## Lawsuit seeks $25,000

The federal copyright infringement lawsuit was filed in California by Williams' attorney, Jeff Gluck of Gluck Law Firm in Los Angeles.

It claims that Hy-Vee's use of the mural in the commercial could damage Williams' art business.

As an artist, he avoids "corporate culture" and "mass-market consumerism," according to the lawsuit.

"People who recognized his mural in the campaign would have concluded that Williams 'sold out,' diminishing the value of his work and reputation," the lawsuit says.

Williams is also claiming alteration and removal of copyright information. The commercial does not show his artist initials "CAW" and his Instagram handle, which are on the Des Moines mural.

He is requesting at least $25,000 and the removal of his mural from the advertisement.

## Who owns public art?

The question of who can use public art and for what purposes has become increasingly prevalent as more murals and artwork are used in digital media and social media posts, said Charlie Damschen, attorney and partner at Hamilton IP Law in Iowa.

Even if art is created and displayed in a public place, the artist still owns the copyright to the piece, Damschen said.

In Nashville, a muralist sued Hollyn, a Christian singer and songwriter, for using one of his murals in a music video that was posted on YouTube in 2018 and garnered 100,000 views before it was taken down. The artist, Jason Woodside, claimed Hollyn violated his copyright protection.

However, fair use laws allow the use of copyrighted material as long as it is done for a "transformative" purpose, like commentary, criticism, news or parody.

In a letter to Williams' attorney, Hy-Vee's representatives claimed the use of the mural was transformed in the commercial and the usage of the mural was a small portion of the overall

advertisement.

However, if an entity replicates or copies a piece of work through a video or a photograph and profits from it, the usage may not fall under fair use, Damschen said.

"There's a difference between you taking a selfie with a copyrighted work in the background and an entity using a copyrighted work in its background," Damschen said.

Williams' lawsuit states the goal of Hy-Vee's commercial was to increase sales revenue for the grocery chain. He said this is an issue that artists face on a regular basis.

"I truly feel as though I have been bullied by this corporation, but I will stand up for myself and artists everywhere and do whatever I have to do to fight them to the end," he said.

1/18/22, 5:39 PM     A Street Artist Is Suing a Grocery Chain for Allegedly Using His Work in an Oprah-Narrated Super Bowl Ad Without His Consent

Case 4:22-cv-00025-RGE-HCA   Document 15-3   Filed 05/17/22   Page 27 of 48     App. 025

artnet   news (/)

**Law (https://news.artnet.com/art-world/art-law)**

# A Street Artist Is Suing a Grocery Chain for Allegedly Using His Work in an Oprah-Narrated Super Bowl Ad Without His Consent

Chris Williams says the commercial has damaged his reputation.

**Eileen Kinsella (https://news.artnet.com/about/eileen-kinsella-22)**, August 27, 2019



Chris Williams's mural in Des Moines, Iowa. He is suing Hy-Vee for allegedly using it in a commercial without his permission. Image via courtlistener.com

Chris Williams, an artist based in Des Moines, Iowa, who goes by the pseudonym CAW, has filed a copyright infringement suit against national grocery store chain Hy-Vee after the company allegedly used images he created in an advertising campaign narrated by Oprah Winfrey without his permission.

EXHIBIT 8

App. 025

Williams painted the outdoor mural on the broad side of a building in October 2018 and signed it as "CAW" on its lower right-hand corner. He painted the lower left corner with his Instagram contact information, @KingCAW, (https://www.instagram.com/kingcaw/?hl=en) according to the complaint, which was filed August 1 in a US District Court in California, where the ad campaign was distributed, according to the complaint.

According to court papers, earlier this year, Hy-Vee "inexplicably featured the mural in a marketing campaign… without the artist's knowledge or consent. The campaign included a commercial—with lingering shots of the mural —that premiered during the Super Bowl and continued to air on television for several months thereafter. The campaign was also posted widely across Hy-Vee's social media, including on its YouTube channel."

A representative for Hy-Vee did not respond to request for comment by publication time.

 

Screen shots from the ad campaign. Image via courtlistener.com

According to Williams's lawsuit, Hy-Vee's "exploitation of the mural is particularly damaging because Williams has carefully avoided any association with corporate or mass market consumerism. Despite offers, he has very rarely made his original art available as part of corporate advertising campaigns—partly for artistic reasons but also because doing so would diminish the value of his work."

The complaint asserts that nothing is more antithetical to a street artist's credibility than association with something as banal and commercial as a grocery store chain. Williams alleges misappropriation of the mural and says Hy-Vee also removed his signature from the advertising materials. He is seeking attorney fees and punitive damages for claims including "alteration and removal of copyright management information under the Digital Millenium Copyright Act."

"My client gave Hy-Vee an opportunity to do the right thing. Instead, they completely ignored him and brushed him aside," Williams's Los Angeles-based attorney, Jeff Gluck, told artnet News via email. "Chris decided to file this lawsuit to protect his rights and the rights of all artists who find their work being used without permission. The artist community will not stand for this type of behavior and we will fight back."

Asked for comment, Williams told artnet News: "I think I need to clarify that it's okay to take selfies in front of murals but it's not okay for corporations to reproduce art for commercial purposes . I thought this was very apparent but some people are very confused by this. I don't think people are seeing the big picture here. My art and creative energy gets diminished when it's made into a corporate backdrop  this is not my goal as an artist and not something I want to participate in."

*Follow Artnet News (https://www.facebook.com/artnet) on Facebook:*

Like 383K

*Want to stay ahead of the art world? Subscribe to our newsletter to get the breaking news, eye-opening interviews, and incisive critical takes that drive the conversation forward.*
*(http://link.artnet.com/join/522/newscta&hash=8e9534fb495110baf97a368037111816)*

SHARE





1  **GLUCK LAW FIRM P.C.**
Jeffrey S. Gluck (SBN 304555)
2    Jeff@GluckIP.com
602 N. Sweetzer Avenue
3  Los Angeles, California 90048
Telephone: 310.776.7413
4

5  **ERIKSON LAW GROUP**
David Alden Erikson (SBN 189838)
6    david@daviderikson.com
Antoinette Waller (SBN 152895)
7    antoinette@daviderikson.com
S. Ryan Patterson (SBN 279474)
8    ryan@daviderikson.com
200 North Larchmont Boulevard
9  Los Angeles, California 90004
Telephone: 323.465.3100
10  Facsimile: 323.465.3177

11  Attorneys for Plaintiff

12              UNITED STATES DISTRICT COURT

13      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

14

15  CHRIS A. WILLIAMS, an individual;      Case No.

16              Plaintiff,              **COMPLAINT FOR COPYRIGHT**
                                        **INFRINGEMENT**
17          v.

18  HY-VEE, INC., an Iowa corporation;    **DEMAND FOR JURY TRIAL**
    and DOES 1-10 inclusive.
19
              Defendants.
20

21

22      Plaintiff Chris A. Williams a/k/a CAW hereby complains against Defendant

23  Hy-Vee, Inc. ("Hy-Vee"); and Does 1-10 inclusive (collectively referred to as

24  "Defendants") as follows.

25

26

27

28

┌─────────────────┐
│  **EXHIBIT**    │
│     **9**       │
└─────────────────┘

1                                        COMPLAINT

### SUMMARY OF THE CASE

1.  Plaintiff Chris A. Williams is an artist and community-based muralist, well known in the contemporary art world by his pseudonym CAW.

2.  In October 2018, Williams painted an outdoor Mural on the broad side of a building (the "Mural," shown below). He signed the Mural on its lower right hand corner, and painted his Instagram contact information on the lower left corner.



*The Mural, 2018*

3.  Earlier this year, national grocery store chain Hy-Vee inexplicably featured the Mural in a marketing campaign (the "Campaign"), without the artist's knowledge or consent. The Campaign included a commercial—with lingering shots of the Mural—that premiered during the Super Bowl and continued to air on

COMPLAINT

television for several months thereafter. The Campaign was also posted widely

across Hy-Vee's social media, including on its YouTube channel.



4.      Hy-Vee's exploitation of the Mural is particularly damaging because

Williams has carefully avoided any association with corporate culture or mass-

market consumerism. Despite offers, he has very rarely made his original art

available as part of corporate advertising campaigns—partly for artistic reasons but

also because doing so would diminish the value of his work. Indeed, nothing is more

antithetical to a street artist's credibility than association with something as banally

commercial as a chain of grocery stores. People who recognized his Mural in the

Campaign would have concluded that Williams "sold out," diminishing the value of

his work and reputation.

5.      Plaintiff brings this straightforward copyright infringement claim (17

U.S.C. § 101, *et seq*.) for misappropriation of his Mural. Because Hy-Vee removed

his signature from the advertising materials, Plaintiff also brings claims for

alteration and removal of copyright management information under the Digital

Millennium Copyright Act (17 U.S.C. § 1202).

**JURISDICTION AND VENUE**

6.     This Court has original subject matter jurisdiction over this action and the claims asserted herein, pursuant to 28 U.S.C. Section 1331 ("federal question jurisdiction") and 1338(a)-(b) ("patent, copyright, trademark and unfair competition jurisdiction") in that this action arises under the laws of the United States and, more specifically, Acts of Congress relating to patents, copyrights, trademarks, and unfair competition.

7.     Defendants are subject to the personal jurisdiction of the Court because the Campaign was distributed in, expressly aimed at, and viewed by, California residents and residents of this District. Venue is proper in this District pursuant to 28 U.S.C. Section 1391(b)(1)-(3) for the same reasons.

**THE PARTIES**

8.     Defendant Hy-Vee is an Iowa corporation operating a national grocery retail business. It maintains a headquarters in West Des Moines, Iowa.

9.     Plaintiff is ignorant of the true names and capacities of the defendants sued herein as Does 1-10, inclusive, and therefore sues said defendants by such fictitious names. Plaintiff will amend this Complaint to allege the true names and capacities when the same has been ascertained. Plaintiff is informed and believes, and thereon alleges, that each fictitiously-named defendant is responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by their conduct.

10.     Each of the defendants acted as an agent for each of the other defendants in doing the acts alleged and each defendant ratified and otherwise adopted the acts and statements performed, made or carried out by the other defendants so as to make them directly and vicariously liable to the Plaintiff for the conduct complained of herein.

COMPLAINT

App. 030

**GENERAL ALLEGATIONS**

**A.     Plaintiff**

11.     Williams is a well-known contemporary graffiti artist and has participated in gallery shows and art festivals.

**B.     The Mural**

12.     Williams painted the original Mural in 2018, in Des Moines, Iowa. The purpose of the Mural was purely artistic, offered to the community as a piece of fine art. The copyright for the Mural was registered with the United States Copyright Office, effective June 26, 2019 (United States Copyright Registration VAu001359660).

**C.     Hy-Vee's Advertising Campaign Featuring the Mural**

13.     In 2019, to increase sales, attract new customers, and enhance its brand goodwill, Hy-Vee developed and launched the Campaign featuring the Mural as a centerpiece element. In one Campaign commercial, which aired during the Super Bowl, the Mural is shown multiple times, close up and in detail, in nearly its entirety, for a substantial period of time. The Campaign commercial begins with a young girl traveling alone between school and home, passing the Mural along the way, and follows this same journey over the years leading to her college graduation.

 

As shown in the images above, Defendants repetitive use of the Mural enhances the central narrative of the Campaign commercial by conveying the routine nature of the young girl's journey through her neighborhood, and highlighting her growth from a small child to a young woman.

COMPLAINT

14.     The Mural was incorporated into the Campaign without Plaintiff's authorization—or even his knowledge. The purpose of the Campaign was to invite and encourage consumers to shop for groceries at Hy-Vee, and to enhance the Hy-Vee's image and goodwill by touting its good deeds and portraying it as a valuable aspect of children's lives.

15.     In this regard, Hy-Vee, undertook to unlawfully copy, and did unlawfully copy, Plaintiff's Mural for the purpose of incorporating it into the Campaign. On information and belief, Hy-Vee chose to include Plaintiff's Mural in the Campaign because of its aesthetic value and to give the false impression that Plaintiff is affiliated with and endorses Hy-Vee.

16.     In addition to being widely broadcast on network television, versions of the Campaign commercial featuring the Mural were offered across the internet and Hy-Vee's social media platforms, including, but not limited to, its YouTube channel. Reflecting its importance and appeal, an image of the Mural was also chosen as the thumbnail/cover of the video in Hy-Vee's social media channels.

17.     On information and belief (based on the content of the Campaign), the Campaign was designed to draw in and engage the consumers to whom Hy-Vee hoped to sell products.

18.     Further purposes of the Campaign were to (1) promote Hy-Vee's retail grocery business and more specifically its One Step brand's partnership with Oprah Winfrey's O, That's Good products; and (2) benefit the reputation and recognition of the Hy-Vee brand as a whole. The Campaign was intended to (and on information and belief, did) engage customers, increase traffic to Hy-Vee's retail locations, website, social media accounts, and increase Hy-Vee's sales revenues.

19.     On information and belief (based on the nature of the advertising) the Campaign was seen by many consumers worldwide. The Campaign was shared across a network of official Hy-Vee social media channels and was widely broadcast on television—most notably during the 2019 Super Bowl.

Case 2:22-cv-00025-RGE-HCA   Document 15-3   Filed 05/17/22   Page 35 of 48
Case 4:22-cv-00074-ASE-HCA   Document 1   Filed 03/01/19   Page 7 of 12   Page ID #87
App. 033

20.     Hy-Vee reproduced these unauthorized copies of Plaintiff's artwork without Plaintiff's consent; and Hy-Vee's use of Plaintiff's artwork is for its own advertising and brand enhancement.

21.     If this literal misappropriation was not bad enough, Hy-Vee also superimposed its own brand logo below the Mural throughout the video, as if the Hy-Vee brand created the Mural itself, or, alternatively, as if the Hy-Vee brand was endorsed by Plaintiff.

22.     After discovering Hy-Vee's unauthorized use of the Mural, Plaintiff promptly demanded Defendants cease using the infringing images. Defendants refused, and Hy-Vee continues to use the infringing images to this day.

23.     Due to Defendants' misconduct as alleged herein, Plaintiff's reputation and career have been irreparably tarnished, diminishing the value of his work and causing decreased revenue from the sale of artworks.

24.     Hy-Vee benefitted from the misappropriation and infringement in numerous ways, including but not limited to the following: (1) they enjoyed the increased digital impressions and sales increases generated by the advertisements; and (2) the association with Plaintiff and his artwork increased the value, image, and positioning of the Hy-Vee brand.

25.     Plaintiff has sustained significant injury and monetary damages due to Defendants' wrongful acts as alleged in this Complaint. Plaintiff is at present unable to ascertain the full extent of the monetary damages he has suffered by reason of said acts. To determine the full extent of such damages, including such profits of Defendants as may be recoverable, Plaintiff will require an accounting from each Defendant of all monies generated from their wrongful conduct.

26.     Plaintiff is informed and believes, and thereon alleges, that Defendants' alleged conduct was, and continues to be, intentional, deliberate, willful, wanton, committed with the intention of injuring Plaintiff, and depriving Plaintiff of Plaintiff's legal rights; was, and is, despicable conduct that subjects Plaintiff to a

COMPLAINT
App. 033

cruel and unjust hardship; and was, and continues to be, undertaken with oppression, fraud and malice. Accordingly, Plaintiff is entitled to an award of punitive or exemplary damages.

27.　Defendants' actions have caused, and will continue to cause, damage and irreparable harm to Plaintiff (as described above) and are likely to continue unabated, thereby causing further damage and irreparable harm to Plaintiff, unless preliminarily and permanently enjoined and restrained by the Court.

### First Claim for Relief for Copyright Infringement

### (Against All Defendants)

28.　Plaintiff incorporates herein by this reference all prior paragraphs as if set forth in full in this cause of action.

29.　Plaintiff's Mural was created in 2018. The Mural is an original work that may be copyrighted under United States law. Plaintiff applied to the copyright office and received a certificate of registration for the Mural, dated June 26, 2019 and identified as United States Copyright Registration Number VAu001359660.

30.　After Plaintiff's creation of the graphic expression and (on information and belief) with full knowledge of the rights of Plaintiff, Defendants infringed Plaintiff's copyright by copying, as described above, the artwork and exhibiting such copied images as advertising materials.

31.　Even after Plaintiff protested, Defendants continue to infringe Plaintiff's copyright by continuing to exhibit unauthorized copies of Plaintiff's Mural in advertising materials, and on Defendants' websites and social media.

32.　All of Defendants' acts were performed without the permission, license or consent of Plaintiff.

33.　As a result of Defendants' infringement, Plaintiff has suffered and will continue to suffer substantial damage to Plaintiff's businesses in the form of diversion of trade, loss of profits, and a diminishment in the value of Plaintiff's works, rights, and reputation, all in amounts that are not yet ascertainable but not

1 less than the jurisdictional minimum of this court. As a result of Defendants'

2 misconduct as alleged herein, Plaintiff's reputation and career has been irreparably

3 tarnished, diminishing the value of Plaintiff's works, and decreasing revenue

4 derived from his work.

5      34.    By reason of their infringement of Plaintiff's copyright as alleged

6 herein, Defendants are also liable to Plaintiff for the actual damages incurred by

7 Plaintiff as a result of the infringement, and for any profits of Defendants directly or

8 indirectly attributable to such infringement.

9 **Second Claim for Relief for Removal of Copyright Management Information in**

10 **Violation of the Digital Millennium Copyright Act (17 U.S.C. § 1202(b))**

11 **(Against All Defendants)**

12      35.    Plaintiff incorporates herein by this reference all prior paragraphs as if

13 set forth in full in this cause of action.

14      36.    Plaintiff prominently signed his art pseudonym "CAW" to the lower

15 right of the Mural:



22 In addition, Plaintiff included his contact information in the form of his Instagram

23 account name "@KingCAW" in the lower left of the Mural. By cropping the video

24 frame, Hy-Vee intentionally removed Plaintiff's signature and contact information

25 from the copies of the Mural used in the Campaign.

26      37.    By removing Williams's signature in the Campaign, Hy-Vee

27 intentionally altered/removed copyright management information with the intent to

28 induce, enable, facilitate, or conceal an infringement of Plaintiff's rights under the

App. 036

1   Copyright Act. Such conduct is a violation of 17 U.S.C. § 1202(b).

2       38.   Defendants' removal of copyright management information was made

3   without the knowledge or consent of Plaintiff.

4       39.   On information and belief, Defendant's removal copyright management

5   information was done by Defendant intentionally, knowingly, and with the intent to

6   conceal Defendant's infringement of Plaintiff's copyright in the Mural. Defendant

7   also knew, or had reason to know, that such removal and/or alteration of copyright

8   management information would conceal Defendant's infringement of Plaintiff's

9   copyright in the Mural. Lacking any way to know Defendant's states of mind,

10  Plaintiff pleads Defendant's intent/knowledge on information and belief. The basis

11  for such information and belief is an inference from the nature of Defendant's

12  copying: the most plausible explanation for Defendant's choice to omit Williams's

13  signature and contact information from Defendant's use of the works is that that

14  Defendant intended to obscure Williams's name in order to make less likely that

15  Plaintiff would learn of Defendant's infringement. That Defendant's cropping out of

16  Plaintiff's signature and contact information was intentional may also be inferred

17  from the fact that Defendant used the vast majority of the Mural in the commercial,

18  but left out the two areas that featured copyright management information.

19      40.   Plaintiff has sustained significant injury and monetary damages due to

20  Defendants' wrongful acts as hereinabove alleged. Plaintiff is at present unable to

21  ascertain the full extent of the monetary damages suffered by reason of said acts. To

22  determine the full extent of such damages, including such profits of Defendants as

23  may be recoverable under 17 U.S.C. § 1203, Plaintiff will require an accounting

24  from each Defendant of all monies generated from their wrongful falsification,

25  removal and alteration of copyright management information.

26      41.   In the alternative, Plaintiff elects to recover statutory damages pursuant

27  to 17 U.S.C. § 1203(c)(3) in a sum of not more than $25,000 from each defendant

28  for each violation of 17 U.S.C. § 1202.

COMPLAINT

App. 036

Case 4:22-cv-00025-RGE-HCA   Document 15-3   Filed 05/17/22   Page 39 of 48
Case 2:19-cv-06012-AS   Document 1   Filed 08/01/19   Page 11 of 12   Page ID #:11
App. 037

# PRAYER

WHEREFORE, Plaintiff prays judgment against Defendants as follows:

1.      That Plaintiff is awarded all damages, including future damages, that Plaintiff has sustained, or will sustain, due to the acts complained of herein, subject to proof at trial;

2.      That Plaintiff is awarded his costs, attorneys' fees and expenses in this action;

3.      That Plaintiff is awarded pre-judgment interest;

4.      For an order permanently enjoining Defendants and their employees, agents, servants, attorneys, representatives, successors, and assigns, and all persons in active concert or participation with any of them, from engaging in the misconduct referenced herein;

5.      That Defendants be ordered to immediately recall and remove all infringing advertisements from all remaining locations, physical or digital;

6.      That Defendants be ordered to file with this Court and serve upon Plaintiff's counsel within thirty (30) days after services of the judgment demanded herein, a written report submitted under oath setting forth in detail the manner in which they have complied with the judgment;

7.      For disgorgement of all proceeds, and restitution of the moneys wrongfully received by Defendants as the result of their wrongful conduct;

8.      For punitive damages in an amount sufficient to deter Defendants, and each of them, from their wrongful conduct; and

10.     For further relief, as the Court may deem appropriate.


DATED: July 31, 2019                    GLUCK LAW FIRM P.C.


                        By:     _____/s/_____
                                Jeffrey S. Gluck
                                Attorney for Plaintiff


App. 037

1            **DEMAND FOR JURY TRIAL**

2        Plaintiff hereby demands a jury trial on their claims on all issues triable by a

3  jury.

4

5  DATED: July 31, 2019           GLUCK LAW FIRM P.C.

6                     By:      /s/

7                             Jeffrey S. Gluck
                                 Attorneys for Plaintiff

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

1  **GLUCK LAW FIRM P.C.**
   Jeffrey S. Gluck (SBN 304555)
2    Jeff@GluckIP.com
   602 N. Sweetzer Avenue
3  Los Angeles, California 90048
   Telephone: 310.776.7413
4
   **ERIKSON LAW GROUP**
5  David Alden Erikson (SBN 189838)
     david@daviderikson.com
6  Antoinette Waller (SBN 152895)
     antoinette@daviderikson.com
7  S. Ryan Patterson (SBN 279474)
     ryan@daviderikson.com
8  200 North Larchmont Boulevard
   Los Angeles, California 90004
9  Telephone: 323.465.3100
   Facsimile: 323.465.3177
10
   Attorneys for Plaintiff
11

12              UNITED STATES DISTRICT COURT

13      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

14

15  CHRIS A. WILLIAMS, an individual;    Case No.  2:19-cv-06671-AS

16              Plaintiff,               **NOTICE OF VOLUNTARY
                                         DISMISSAL WITHOUT
17         v.                            PREJUDICE**

18  HY-VEE, INC., an Iowa corporation;
   and DOES 1-10 inclusive.             [FEDERAL RULE OF CIVIL
19                                        PROCEDURE 41(a)(1)(A)(i)]
              Defendants.
20

21

22

23

24

25

26

27                                        **EXHIBIT**
                                          **10**
28

                            1       VOLUNTARY DISMISSAL WITHOUT
                                            PREJUDICE
                                                          App. 039

Pursuant to Federal Rules of Civil Procedure Rule 41(a)(1)(A)(i), Plaintiff Chris A. Williams, by and through his attorneys of record, hereby gives notice that the above-entitled action is voluntarily dismissed without prejudice.

DATED: November 15, 2019   ERIKSON LAW GROUP

         By:    /s/
            David A. Erikson
            Attorneys for Plaintiff



Help    Search    History    Titles    Start Over

# Public Catalog

Copyright Catalog (1978 to present)
Search Request: Left Anchored Copyright Number = VAu001359660
Search Results: Displaying 1 of 1 entries



Labeled View

### *UNTITLED CAW.*

|  |  |
|---|---|
| **Type of Work:** | Visual Material |
| **Registration Number / Date:** | VAu001359660 / 2019-06-26 |
| **Application Title:** | UNTITLED CAW. |
| **Title:** | UNTITLED CAW. |
| **Description:** | Electronic file (eService) |
| **Copyright Claimant:** | Christopher CAW Williams. Address: 602 N. Sweetzer, Los Angeles. |
| **Date of Creation:** | 2018 |
| **Authorship on Application:** | Christopher CAW Williams (author of pseudonymous work); Citizenship: United States. Authorship: Artwork. |
| **Copyright Note:** | Regarding basis for registration: A work may be registered with the Single Application only if the following requirements have been met: 1) The registration covers one work; 2) The work must be created by one individual; 3) All of the material contained within the work must be created by the same individual; 4) The author and the owner of the work must be the same person, and that person must own all of the rights in the work; 5) The work cannot be a work made for hire. |
| **Names:** | Williams, Christopher CAW |



| **Save, Print and Email (Help Page)** | |
|---|---|
| Select Download Format Full Record    Format for Print/Save | |
| Enter your email address: _____    Email | |

Help    Search    History    Titles    Start Over

Contact Us  |  Request Copies  |  Get a Search Estimate  |  Frequently Asked Questions (FAQs) about Copyright  |
Copyright Office Home Page  |  Library of Congress Home Page

EXHIBIT
11

App. 041



## Hy-Vee One Step

We know we can't solve all the world's problems. But we can do something. And you can do something, too. All it takes is one step. If we take that step together, we can help people, our communities and the planet.

**EXHIBIT**
**12**



**Feeding the hungry.**

Millions of adults and children across the world don't have enough to eat. Hy-Vee One Step cereals help support Meals from the Heartland, which provides food to food insecure people around the world.



**Planting trees.**

Trees provide essential oxygen and beautify our communities. Hy-Vee One Step paper products help plant more of them.



**Building wells.**

One in six people worldwide lack access to safe drinking water. Hy-Vee One Step bottled water helps build wells to provide clean water for whole communities.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA CENTRAL DIVISION

| | |
|---|---|
| CHRIS A. WILLIAMS,<br><br>    Plaintiff,<br><br>    vs.<br><br>HY-VEE, INC. and DOES 1–10,<br><br>    Defendants. | No. 4:22-cv-25<br><br>DECLARATION OF<br>JOSHUA CONLEY |

I, Joshua Conley, declare under penalty of perjury that the following is true and correct:

1.    I am counsel of record for Defendant Hy-Vee, Inc. and am competent to make this declaration based on my personal knowledge.

2.    **Exhibit 1** included in the Defendant Hy-Vee's Appendix in Support of Defendant's Motion for Partial Summary Judgment (the "Appendix") is a true and correct copy of the Complaint in the present litigation (Dkt. 1).

3.    **Exhibit 2** included in the Appendix is an image captured by Google Maps portraying a true and accurate depiction of the mural created by Chris A. Williams found on the building located Sixth and College Avenues, in the Riverbend neighborhood of Des Moines, Iowa.

4.    **Exhibit 3** included in the Appendix is a true and correct copy of the Commission Agreement entered into by Plaintiff Chris A. Williams and the 6th Avenue Corridor.

5.    **Exhibit 4** included in the Appendix refers to a true and correct copy of the 60-second promotion that aired during the 2019 Super Bowl.

6.    **Exhibit 5** included in the Appendix refers to a true and correct copy of the 226-second promotion that Hy-Vee posted to its Facebook page.

**EXHIBIT**
**13**

7.      **Exhibit 6** included in the Appendix is a true and correct copy of the messages exchanged by Plaintiff Chris A. Williams and Hy-Vee via Facebook Messenger.

8.      **Exhibit 7** included in the Appendix is a true and correct copy of the Des Moines Register article published on August 25, 2019 and retrieved on January 18, 2022.

9.      **Exhibit 8** included in the Appendix is a true and correct copy of the Artnet article published on August 27, 2019 and retrieved January 18, 2022.

10.     **Exhibit 9** included in the Appendix is a true and correct copy of the Complaint for Copyright Infringement (Case No. 2:19-cv-06671-AS) filed in the United States District Court Central District of California, Western Division (the "California Lawsuit").

11.     **Exhibit 10** included in the Appendix is a true and correct copy of the Notice of Voluntary Dismissal Without Prejudice filed in the California Lawsuit.

12.     **Exhibit 11** included in the Appendix is a true and correct copy of Copyright Office's Public Catalog for Registration No. VAu001359660.

13.     **Exhibit 12** included in the Appendix is a true and correct copy of a portion of the Hy-Vee One Step® webpage located www.hy-vee.com/corporate/our-company/one-step/ that was accessed on May 12, 2022.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 12, 2022                     /s/Joshua J. Conley
                                        Joshua J. Conley