IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| CHRIS A. WILLIAMS,<br><br>      Plaintiff,<br><br>v.<br><br>HY-VEE, INC. and DOES 1–10,<br><br>      Defendants. | **No. 4:22-cv-00025-RGE-HCA**<br><br><br>**ORDER GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

## I.    INTRODUCTION

Plaintiff Chris A. Williams sues Defendant Hy-Vee and Does 1–10, alleging claims for copyright infringement in violation of the Copyright Act of 1976, moral rights infringement in violation of the Visual Artists Rights Act of 1991, and removal of copyright management information in violation of the Digital Millennium Copyright Act of 1998.[1] Hy-Vee brings a counterclaim for declaratory judgment invalidating Williams's copyright registration. Hy-Vee moves for summary judgment on all claims.

The Court grants in part Hy-Vee's motion for summary judgment. Hy-Vee is entitled to summary judgment on Williams's claims for copyright infringement, moral rights infringement, and removal of copyright management information. The Court concludes Hy-Vee has satisfied is preliminary burden under 17 U.S.C. § 411(b)(1)(a) to show Williams knowingly provided inaccurate information to the United States Copyright Office in his copyright registration application. Having established this precondition, the Court is mandated under 17 U.S.C.

---

[1] Williams alleges Does 1–10 are the unknown individuals or entities hired by Hy-Vee to produce and air the commercial at issue in the present action. Compl. ¶ 10, ECF No. 1. Hy-Vee does not move on behalf of Defendants Does 1–10. *See* Def.'s Mot. Summ. J. 1, ECF No. 15. Therefore, the Court does not consider Williams's claims against Does 1–10.

§ 411(b)(2) to request the Register of Copyrights advise the Court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse Williams's registration. The Court cannot issue a ruling on Hy-Vee's declaratory judgment request until after it receives guidance from the Register of Copyrights.

## II.   BACKGROUND

The following facts are either uncontested or, if contested, viewed in the light most favorable to Williams, the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Williams is a professional artist. Pl.'s Resp. Def.'s Statement Undisputed Facts Supp. Def.'s Mot. Summ. J. ¶ 1, ECF No. 26-1. Williams was commissioned by 6th Avenue Corridor to create a mural on the wall of a building located in Des Moines, Iowa. *Id.* ¶ 2. On October 5, 2018, Williams and 6th Avenue Corridor entered a written agreement to govern the terms of the mural's commission. *Id.* ¶ 4; *see* Def.'s Ex. 3 Supp. Def.'s Mot. Summ. J. at App. 015–17, ECF No. 15-3. The Agreement identifies Williams as "the Artist" and 6th Avenue Corridor as "the Purchaser." ECF No. 26-1 ¶ 5; *see* ECF No. 15-3 at App. 015. The Agreement describes the work of art Williams was commissioned to create as an "abstract mural" made from paint, approximately thirty by twelve feet in size. Pl.'s Statement Additional Undisputed Facts Supp. Resist. Def.'s Mot. Summ. J. ¶ 13, ECF No. 26-2; ECF No. 15-3 at App. 015.

Section Two of Agreement provides Williams would receive $3,500.00 to "sell the Work to the Purchaser," with half the payment to be paid upon execution of the Agreement and the other half to be paid upon notification the mural was completed. ECF No. 26-1 ¶ 6; ECF No. 15-3 at App. 015.

Section Six of the Agreement, entitled "Ownership," states:

a. In the event of termination of this Agreement . . . the Artist shall retain all rights

of ownership in the concept, design, and Work itself, including the right to complete, exhibit, and sell the Work unless the Work is directly painted onto a surface of a building which the Artist does not own.

b. Once the final payment has been made, ownership of the Work transfers to the Purchaser. If a building upon which the Work is installed is not owned by the Purchaser, ownership of the Work transfers to the building owner. Purchaser and/or building owner may not copyright, reproduce, or merchandise images of the Work without the Artist's written consent in advance.

ECF No. 26-1 ¶ 7; ECF No. 15-3 at App. 016.

Section Seven of the Agreement states: "The Purchaser will not permit any use of the Artist's name or misuse of the Work which would reflect discredit on his/her reputation as an artist or which would violate the spirit of the Work." ECF No. 26-1 ¶ 9; ECF No. 15-3 at App. 017.

Section Thirteen of the Agreement states: "This agreement contains all the covenants, promises, agreements, and conditions, either oral or written, between the parties, and may not be changed or modified except in writing signed by authorized representatives of the parties hereto." ECF No. 26-1 ¶ 8; ECF No. 15-3 at App. 017.

On or before November 15, 2018, Williams completed the commissioned mural and 6th Avenue Corridor provided final payment to Williams, per the terms of the Agreement. ECF No. 26-1 ¶ 13. Williams's artistic moniker ("CAW") and his Instagram username ("@KingCaw") are included in the lowermost opposing corners of the mural. ECF No. 26-1 ¶ 3; *see* Def.'s Ex. 2 Supp. Mot. Summ. J. at App. 014, ECF No. 15-3.

Hy-Vee is an Iowa corporation that operates a chain of grocery stores. ECF No. 26-1 ¶ 15. On February 3, 2019, Hy-Vee aired a commercial during Super Bowl LIII, which featured portions of the mural. *Id.* ¶ 19; *see* Def.'s Ex. 4 Supp. Def.'s Mot. Summ. J. 0:15–0:16, 0:46, ECF. No. 15-3. A longer version of the commercial was also posted on Hy-Vee's Facebook page. ECF No. 26-1 ¶ 29; *see* Def.'s Ex. 5 Supp. Def.'s Mot. Summ. J. 1:10–1:16, 2:59–3:08, ECF No. 15-3. The central portion of the mural is depicted in the commercial. ECF No. 26-1 ¶ 20; *see*

ECF. No. 15-3 at App. 018–19. The commercial does not depict the lower right- and left-hand corners of the mural, where Williams's artistic moniker and Instagram username are respectively located. ECF No. 26-1 ¶¶ 20–21; *see* ECF No. 15-3 at App. 014.

Williams viewed the commercial when it aired. ECF No. 26-1 ¶ 30; ECF No. 26-1 ¶ 30. He contacted Hy-Vee via Facebook, stating Hy-Vee "need[ed] to pay up" for "using my bright colors and beauty without giving me a penny." ECF No. 26-1 ¶ 31; *see* Def.'s Ex. 6 Supp. Def.'s Mot. Summ. J. at App. 020, ECF No. 15-3.

On June 26, 2019, Williams registered the mural with the United States Copyright Office under Registration Number VAu001359660. ECF No. 26-1 ¶¶ 37–38; Def.'s Ex. 11 Supp. Def.'s Mot. Summ. J. at App. 041, ECF No. 15-3. On August 1, 2019, he filed suit against Hy-Vee in the United States District Court for the Central District of California, alleging violations of the Copyright Act and Digital Millennium Copyright Act. ECF No. 26-1 ¶¶ 34–35; Def.'s Ex. 9 Supp. Def.'s Mot. Summ. J. at App. 027–38, ECF No. 15-3. Williams voluntarily dismissed that suit in November 2019. ECF No. 26-1 ¶ 36.

On February 3, 2022, Williams filed the present suit. Compl., ECF No. 1. Williams brings claims for copyright infringement in violation of the Copyright Act, 17 U.S.C. § 101 *et seq.*; moral rights infringement in violation of the Visual Artists Rights Act, 17 U.S.C. § 106A; and removal of copyright management information in violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1202(b). *Id.* ¶¶ 56–86. Hy-Vee brings a counterclaim for declaratory judgment that Williams's copyright registration certificate for the mural is invalid. Def.'s Am. Answer, Affirmative Defenses, and Counterclaim 11–14, ECF No. 12.

Hy-Vee now moves for summary judgment on all claims. Def.'s Mot. Summ. J., ECF No. 15. Williams resists. Pl.'s Resist. Def.'s Mot. Summ. J., ECF No. 26. Hy-Vee requests a hearing. ECF No. 15 at 2. The Court decides Hy-Vee's motion without oral argument, finding

4

the parties' briefings and exhibits adequately present the issues. *See* LR 7(c); Fed. R. Civ. P. 78(b). Having considered the parties' briefs and exhibits, the Court rules on Hy-Vee's motion for summary judgment.

Additional facts are set forth below as necessary.

## III.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, the Court must grant a party's motion for summary judgment if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A genuine issue of material fact exists where the issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

When analyzing whether a party is entitled to summary judgment, a court "may consider only the portion of the submitted materials that is admissible or useable at trial." *Moore v. Indehar*, 514 F.3d 756, 758 (8th Cir. 2008) (internal quotation marks omitted) (quoting *Walker v. Wayne Cnty.*, 850 F.2d 433, 434 (8th Cir. 1988)). The nonmoving party "receives the benefit of all reasonable inferences supported by the evidence, but has 'the obligation to come forward with specific facts showing that there is a genuine issue for trial.'" *Atkinson v. City of Mt. View*, 709 F.3d 1201, 1207 (8th Cir. 2013) (quoting *Dahl v. Rice Cnty.*, 621 F.3d 740, 743 (8th Cir. 2010)). "In order to establish the existence of a genuine issue of material fact, a plaintiff may not merely point to unsupported self-serving allegations." *Anda v. Wickes Furniture Co., Inc.*, 517 F.3d 526, 531 (8th Cir. 2008) (cleaned up). "The plaintiff must substantiate [the] allegations with sufficient probative evidence that would permit a finding in [the plaintiff's] favor." *Smith v.*

*Int'l Paper Co.*, 523 F.3d 845, 848 (8th Cir. 2008) (internal quotation marks and citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial," and the moving party is entitled to judgment as a matter of law. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042–43 (8th Cir. 2011) (en banc) (internal quotation marks omitted) (quoting *Ricci v. DeStefano*, 557 U.S. 577, 586 (2009)).

## IV.   DISCUSSION

Williams alleges Hy-Vee's depiction of the mural in the commercial constitutes copyright infringement in violation of the Copyright Act and moral rights infringement in violation of the Visual Artists Rights Act. ECF No. 1 ¶¶ 14–76. He also alleges Hy-Vee removed his copyright management information in violation of the Digital Millennium Copyright Act because the commercial does not display the portions of the mural that contain Williams's artistic moniker and Instagram username. *Id.* ¶¶ 77–86.

Hy-Vee brings a counterclaim against Williams seeking declaratory judgment that Williams's copyright registration certificate for the mural is invalid because Williams knowingly provided inaccurate information to the Register of Copyrights when he filed his copyright registration application. ECF No. 12 at 11–14. Hy-Vee moves for summary judgment on all claims. ECF No. 15 at 1–2.

The Court addresses each of Williams's claims—copyright infringement, moral rights infringement, and removal of copyright management information—in turn, and determines Hy-Vee is entitled to summary judgment on each claim. Next, the Court considers Hy-Vee's request for declaratory judgment that Williams's copyright registration is invalid, finding Hy-Vee has satisfied is preliminary burden under 17 U.S.C. § 411(b)(1)(a). Because § 411(b)(2) requires referral to the Register of Copyrights, the Court cannot issue a ruling on Hy-Vee's declaratory judgment request until it receives guidance from the Register of Copyrights. The Court directs the

parties below on the steps required to resolve Hy-Vee's outstanding claim.

### A.      Copyright Infringement

Williams alleges Hy-Vee infringed his copyright in the mural by displaying portions of the mural in the commercial without his authorization. ECF No. 1 ¶¶ 56–65. Hy-Vee argues it is entitled to summary judgment on Williams's copyright infringement claim because he does not own a valid copyright in the mural. Def.'s Br. Supp. Def.'s Mot. Summ. J. 10–11, ECF No. 15-1. Hy-Vee alleges Williams transferred his copyright in the mural to 6th Avenue Corridor upon receiving final payment for the mural. *Id.* at 11. As such, Hy-Vee asserts Williams cannot prove copyright infringement as a matter of law. *See id.* Williams disagrees, arguing the Agreement only provided for transfer of ownership of the "physical work embodying the copyright," not the copyright itself. ECF No. 26 at 9.

"The elements of copyright infringement are (1) ownership of a valid copyright and (2) copying of original elements of the copyrighted work." *Warner Bros. Ent., Inc. v. X One X Prods.*, 644 F.3d 584, 595 (8th Cir. 2011) (citing *Taylor Corp. v. Four Seasons Greetings, L.L.C.*, 403 F.3d 958, 962–63 (8th Cir. 2005)). "The plaintiff in a copyright infringement claim has the burden to prove ownership of a valid copyright." *Id.* at 591 (citing *Taylor*, 403 F.3d at 962). Copyright ownership "vests initially in the author or authors of the work." 17 U.S.C. § 201(a). The author of a given work is "the person who translates the idea into a fixed, tangible expression entitled to copyright protection." *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989). Copyright, however, "may be transferred from the owner to another entity." *Taylor*, 403 F.3d at 963 (citing 17 U.S.C. § 201(d)). "A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent." 17 U.S.C. § 204(a)). A "certificate of registration . . . constitute[s] prima facie

evidence" that a plaintiff holds a valid copyright and grants the plaintiff a "rebuttable presumption of validity." *Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc.*, 908 F.3d 313, 323 (8th Cir. 2018).

A party cannot bring a copyright infringement claim "until preregistration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a). Here, Hy-Vee does not dispute Williams's possession of a registered copyright in the mural; Hy-Vee instead challenges the registration's validity. ECF No. 12 ¶ 59; *see* ECF No. 15-1 at 10–11. As evidence of his copyright registration, Williams submits a copy of an online search request for Copyright Registration Number VAu001359660 in the United States Copyright Office's Public Catalog. ECF No. 15-3 at App. 041. This exhibit shows Williams's claimed copyright for a "Visual Material" named "Untitled CAW" in 2018. *Id.* Williams may therefore bring this initial claim for copyright infringement against Hy-Vee. *See* 17 U.S.C. § 411(a). He is not, however, entitled to a rebuttable presumption of copyright ownership, as he has only submitted a copy of his Public Catalog search results—not his certificate of registration. *Cf. Sturgis*, 908 F.3d at 323; *see also La Resolana Architects, PA v. Clay Realtors Angel Fire*, 416 F. 3d 1195, 1207–08 (10th Cir. 2005) ("[I]f the copyright owner cannot present a certificate, the owner can still attempt to prove registration through other means, such as testimony or other evidence from the copyright office. Such other evidence, however, does not entitle a copyright owner to the presumption of validity that § 410 confers on a certificate."), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010).

As the artist who created the mural, copyright ownership vested initially in Williams. *See* 17 U.S.C. § 201(a). To establish whether Williams still owns a valid copyright in the mural, the Court must determine if Williams transferred his copyright ownership to 6th Avenue Corridor upon execution of the Agreement. "Interpretation, the meaning of contractual words, is . . . an issue for

the court . . . ." *Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 225 (Iowa

1998). The parties agree, pursuant to Section Thirteen of the Agreement, that Iowa substantive law

controls the Court's analysis of the Agreement. *See* ECF No. 15-3 at App. 017. "When [the court]

interpret[s] contracts, [it] look[s] to the language contained within the four corners of the

document." *DuTrac Cmty. Credit Union v. Radiology Grp. Real Estate, L.C.*, 891 N.W.2d 210,

216 (Iowa 2017). "If the intent of the parties is clear and unambiguous from the words of the

contract itself, [the court] will enforce the contract as written." *Id.* "If the contract is ambiguous

and uncertain, extrinsic evidence can be considered to help determine the intent." *Hartig Drug Co.*

*v. Hartig*, 602 N.W.2d 794, 797 (Iowa 1999). "The determination that a contract is, or is not,

ambiguous is . . . a legal determination . . . ." *Klein v. Arkoma Prod. Co.*, 73 F.3d 779, 785 (8th

Cir. 1996) (citing *Maurice Sunderland Architecture, Inc. v. Simon*, 5 F.3d 334, 337 (8th Cir.

1993)). "A contract is not ambiguous merely because the parties disagree over its meaning." *Hartig*

*Drug*, 602 N.W.2d at 797. "Instead, an ambiguity occurs . . . when a genuine uncertainty exists

concerning which of two reasonable interpretations is proper." *Id.* "The existence of an ambiguity

[] can be determined only after all pertinent rules of interpretation have been considered." *Id.*

(citing *Berryhill v. Hatt*, 428 N.W.2d 647, 654 (Iowa 1988)). Under Iowa law, courts must "give

effect to the language of the entire contract according to its commonly accepted and ordinary

meaning." *Id.* "[P]articular words and phrases are not interpreted in isolation," but are "interpreted

in a context in which they are used." *Id.* at 798. An "interpretation which gives a reasonable, lawful,

and effective meaning to all terms is preferred to an interpretation which leaves a part

unreasonable, unlawful, or of no effect." *DeJong v. Sioux Center, Iowa*, 168 F.3d 1115, 1120 (8th

Cir. 1999) (citing *Fashion Fabrics of Iowa, Inc. v. Retail Invs. Corp.*, 266 N.W.2d 22, 26 (Iowa

1978)).

Here, the parties offer two competing interpretations of the Agreement. Their dispute

concerns the proper interpretation of the provision: "Once the final payment has been made, ownership of the Work transfers to the Purchaser." ECF No. 15-3 at App. 016; *see* ECF No. 15-1 at 10–11; ECF No. 26 at 4–10; Def.'s Reply Br. Supp. Def.'s Mot. Summ. J. 1–3, ECF No. 30; Pl.'s Surreply Resist. Def.'s Mot. Summ. J. 1–4, ECF No. 35. Hy-Vee interprets the provision as providing for the transfer of copyright ownership in the mural from Williams to 6th Avenue Corridor upon Williams's receipt of final payment. ECF No. 15-1 at 11. Hy-Vee insists the term "the Work" includes both the physical embodiment of the mural and the copyright in the mural. *See* ECF No. 15-1 at 11; ECF No. 30 at 1–2. Hy-Vee argues this interpretation is supported by other provisions of the Agreement. *See* ECF No. 30 at 1–2. Specifically, it argues Subsections 6(a) and 6(b) of the Agreement make clear "the Work" includes copyright ownership. *See id.* Subsection 6(a) states, "In the event of termination of this Agreement . . . the Artist shall retain all rights of ownership in the concept, design, and Work itself . . . ." ECF No. 15-3 at App. 016. Section 6(b) states "Once the final payment has been made, ownership of the Work transfers to the Purchaser. If a building upon which the Work is installed is not owned by the Purchaser, ownership of the Work transfers to the building owner." *Id.* Hy-Vee argues the Agreement's use of both "the Work" and "the Work itself" means "the Work" must be interpreted broadly to include not just the physical embodiment of the mural on a wall but also the underlying copyright in the mural. ECF No. 30 at 1–2.

Williams disagrees with Hy-Vee's interpretation of the Agreement. *See* ECF No. 26 at 4–10; ECF No. 35 at 1–4. Instead, he argues the Agreement "explicitly excludes the transfer of" copyright ownership. ECF No. 26 at 5. He argues Section 6(b) of the Agreement "expressly reserve[s] copyright to Williams by directly reserving to him the exclusive rights that comprise the copyright in the Mural." ECF No. 26 at 8 n.1. He contends copyright is reserved to him in the final provision of Subsection 6(b), which prohibits 6th Avenue Corridor from copyrighting,

reproducing, or merchandising "images of the Work without the Artist's written consent." ECF No. 26 at 5, 9–10; *see* ECF No. 15-3 at App. 016. Williams looks to several items of extrinsic evidence to support his interpretation of the Agreement. *See* ECF No. 26 at 5–6; *see also* Williams Aff., Pl. Ex. 17 Supp. Pl.'s Resist. Mot. Summ. J. at App. 066–69, ECF No. 26-3; Bye Aff., Pl.'s Ex. 18 Supp. Pl.'s Resist. Mot. Summ. J. at App. 070–71, ECF No. 26-3; Pl.'s Ex. A. Supp. Resist. Mot. Summ. J. at App. 073–76, ECF No. 26-3.

The Court concludes there is only one reasonable interpretation of the Agreement. *Cf. Hartig Drug*, 602 N.W.2d at 797. The term "the Work" in Subsection 6(b) refers to both the physical mural and the copyright in the mural. *See* ECF No. 15-3 at App. 016. Therefore, Subsection 6(b) provides for the transfer of both ownership of the physical mural itself and copyright in the mural from Williams to 6th Avenue Corridor upon final payment.

This is the only reasonable interpretation when Subsection 6(b) is read in the context of the entire Agreement. *Cf. Hartig Drug*, 602 N.W.2d at 798. Looking to Section Six in full, Subsection 6(a) reserves "all rights of ownership in the concept, design, and Work itself" to Williams "[i]n the event of termination of the Agreement." *Id.* Thus, the Agreement expressly reserves some intellectual property rights to Williams in the event of termination. No such rights are reserved in Subsection 6(b) to Williams upon the anticipated completion of the mural. *See id.* This omission is telling. Subsection 6(a) shows the parties are capable of distinguishing between various ownership rights in the mural. The parties did not preserve these distinctions in Subsection 6(b). The Court is obligated to give "effective meaning to all terms" in the Agreement. *DeJong*, 168 F.3d at 1120. Reading Subsection 6(b) to silently reserve to Williams the same rights expressly reserved in the immediately preceding clause would frustrate this objective. Such an interpretation would render Subsection 6(a)'s express reservation of Williams's ownership rights in the "concept" and "design" of the mural superfluous. Such an interpretation is improper. *Cf. Kerndt*

11

*v. Rolling Hills Nat'l Bank*, 558 N.W.2d 410, 416 (Iowa 1997) ("[A]n interpretation which gives a reasonable meaning to all terms is preferred to one which renders a term superfluous or of no effect.").

Williams's textual argument relies on Subsection 6(b)'s final provision, which states: "Purchaser and/or building owner may not copyright, reproduce, or merchandise images of the Work without the Artist's written consent in advance." ECF No. 26 at 9–10; *see* ECF No. 15-3 at App. 016. Williams believes interpreting the Agreement to transfer copyright ownership would create the absurd result where 6th Avenue Corridor owns copyright in the mural but cannot exercise that right. *See* ECF No. 26 at 9–10. The Court finds this argument unconvincing. The Agreement does not deprive 6th Avenue Corridor of all rights comprised in copyright in the mural. The Agreement only forbids 6th Avenue Corridor from "copyrighting, reproducing, or merchandising *images* of the Work" without written consent. *See* ECF No. 15-3 at App. 016.[2] The Agreement restrains some—but not all—of the rights comprised in a copyright. *See* 17 U.S.C. § 106. Williams makes several other arguments that rely on extrinsic evidence. *See* ECF No. 26 at 5–6; *see also* ECF No. 26-3 at App. 066–69; ECF No. 26-3 at App. 070–71; ECF No. 26-3 at APP 073–76. Having concluded the Agreement is not ambiguous, the Court cannot consider extrinsic evidence and thus does not address these arguments. *See Hartig Drug*, 602 N.W.2d at 797.

In sum, the Court finds the Agreement between Williams and 6th Avenue Corridor transferred ownership of copyright in the mural from Williams to 6th Avenue Corridor upon final payment to Williams. There is no genuine dispute Williams received his final payment for

---

[2] The parties' arguments do not address the meaning of the word "images." *See generally* ECF Nos. 15, 26, 30, 35, 36. As such, the Court declines to address the scope of this provision in the Agreement.

12

completing the mural. ECF No. 15-2 ¶ 13; ECF No. 26-1 ¶ 13. Therefore, Williams does not own a valid copyright in the mural. Accordingly, the Court finds Hy-Vee is entitled to summary judgment on Williams's copyright claim as a matter of law.

### B.       Moral Rights Infringement

Williams also brings a claim for moral rights infringement under the Visual Artists Rights Act against Hy-Vee. ECF No. 1 ¶¶ 66–76. He alleges Hy-Vee violated his right to attribution under the Visual Artists Rights Act by failing to credit him as the author of the mural in the commercial. ECF No. 1 ¶¶ 70, 74. Hy-Vee argues Williams's claim is meritless because the commercial falls under one of several enumerated exceptions to the Visual Artists Rights Act and asks the Court for summary judgment of Williams's claim. ECF No. 15-1 at 12–13.

The purpose of the Visual Artists Rights Act is to protect two "moral rights" of artists: 1) the right of attribution and 2) the right of integrity. *Cort v. St. Paul Fire & Marne Ins. Cos.*, 311 F.3d 979, 984–85 (9th Cir. 2002) (citing H.R. Rep. No. 101-514, at 5 (1990)). The right of attribution entitles the artist to be recognized by name as the creator of a work. *Carter v. Helmsley-Spear, Inc.*, 71 F.3d 77, 81 (2d Cir. 1995) (citing 2 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 8D–5 (1994)). The right of integrity "allows the [artist] to prevent any deforming or mutilating changes to his work, even after title in the work has been transferred." *Id.*

To secure the right of attribution, the Visual Artists Rights Act provides the author of a work of visual art the right "to claim authorship of that work." 17 U.S.C. § 106A(a)(1)(A). A "work of visual art" is defined as "a painting, drawing, print, or sculpture, existing in a single copy, in a limited edition of 200 copies or fewer that are signed and consecutively numbered by the author . . . ." 17 U.S.C. § 101.[3] "The term 'painting' includes murals, works created on

---

[3] Courts apply the Copyright Act's definition of "work of visual art" when analyzing clams brought under the Visual Artists Rights Act. *See, e.g.*, *Carter*, 71 F.3d at 83.

canvas, and the like." H.R. Rep. No. 101-514, pt. IV, at 6921 (1990). The right of attribution, however, is subject to a broad exception. The Visual Artists Rights Act immunizes from liability "any reproduction, depiction, portrayal, or other use of a work in, upon, or in any connection with any item" enumerated in the Copyright Act's list of items excluded from its definition of a "work of visual art." 17 U.S.C. § 106A(c)(3). Among the items excluded from the Copyright Act's definition of a "work of visual art" is any "motion picture or other audiovisual work." 17 U.S.C. § 101. Thus, a work does not fall within the Visual Artists Rights Act's protections if it is an "audiovisual work," and any depiction of a protected work of visual art in such an audiovisual work need not be accompanied by the artist's name. *See, e.g.*, 3 Nimmer on Copyright § 8D.06 (explaining "[t]he exclusion from the definition of a work of visual art would be of little or no value if [parties] could be held liable under section 106A for the manner in which they depict, portray, reproduce, or otherwise make use of such a work") (quoting H.R. Rep. No. 101-514, at 6927 (1990)).

Williams possesses a right of attribution in the mural because the mural meets the Copyright Act's definition of a "work of visual art." *See* 17 U.S.C. § 101; *see also* 3 Nimmer on Copyright § 8D.06 (explaining the right of attribution vests in the author upon creation of a work and is inalienable); *Carter*, 71 F.3d at 83 ("The [right of attribution] cannot be transferred, but may be waived by a writing signed by the author."). However, Williams's moral rights infringement claim fails because Hy-Vee's use of the mural falls within the audiovisual exception.

The commercial constitutes an "audiovisual work" as defined by the Copyright Act. *See* 17 U.S.C. § 101; *see also Chuck Blore v. Don Richman Inc. v. 20/20 Advert. Inc.*, 674 F. Supp. 671, 677 (D. Minn. 1987) (finding commercials constitute "audiovisual works" as defined by 17 U.S.C. § 101). The parties do not dispute this fact. *See* ECF No. 15-2 ¶ 20. As an audiovisual work, the commercial falls within one of the enumerated exceptions to the Visual Artists Rights

Act. *See* 17 U.S.C. § 106A(c)(3). As such, Hy-Vee cannot be held liable as a matter of law for omitting Williams's name in the commercial's depictions of the mural.

Though Williams does not deny the commercial falls within an exception to the Visual Artists Rights Act, he suggests Hy-Vee may have used the mural in some other manner that does not fall within the scope of any statutory exception. *See* ECF No. 26 at 15–16. Williams, however, provides no evidence to support this allegation. He states only that "it stands to reason that other materials displaying the Mural, which are not audiovisual in nature, were also used by Hy-Vee for commercial purposes." *Id.* As the non-moving party, Williams bears "the obligation to come forward with specific facts showing that there is a genuine issue for trial." *Atkinson*, 709 F.3d at 1207 (quoting *Dahl*, 621 F.3d at 743). Williams has failed to satisfy this burden. The Court concludes there is no genuine dispute as to whether Hy-Vee's only use of the mural was in the long- and short-forms of the commercial. Additionally, there is no genuine dispute that both versions of the commercial constitute an audiovisual work. Hy-Vee is therefore entitled to summary judgment as a matter of law as to Williams's claim under the Visual Artists Rights Act.

### C.    Removal of Copyright Management Information

Section 1202(b) of the Digital Millennium Copyright Act bars the intentional removal or alteration of copyright management information with the knowledge or, with respect to civil remedies, with reasonable grounds to know "it will induce, enable, facilitate, or conceal an infringement" of copyright. 17 U.S.C. § 1202(b). Copyright management information includes "[t]he name of, and other identifying information about, the author of a work." 12 U.S.C. § 1202(c)(2). Copyright management information can be "contained in the body of a work" and need not exactly match the name of the copyright owner. *See Bounce Exch., Inc. v. Zeus Enter. Ltd.*, No. 15CV3268 (DLC), 2015 WL 8579023, at *3 (S.D.N.Y. Dec. 9, 2015) (finding a "shorthand form of the official name of the author of the work" can constitute copyright

management information).

The parties agree Williams's artistic moniker and Instagram handle contained in the lower corners of the mural constitute copyright management information, as defined by 17 U.S.C. § 1202(c). *See* ECF No. 15-1 at 13; ECF No. 26 at 16. Williams alleges Hy-Vee removed this copyright management information by "crop[ping] images of the Mural" in the commercial to remove his "signature and contact information." ECF No. 1 ¶ 80. Hy-Vee denies this copyright management information was altered or removed in the commercial. ECF No. 15-1 at 7. Instead, it argues this information was "merely not included in any of the scenes of the [commercial] that depicted the Mural." *Id.* Hy-Vee relies on *Falkner v. General Motors, L.L.C.* to support its argument for summary judgment. *See* ECF No. 15-1 at 13–14 (citing *Falkner v. Gen. Motors, L.L.C.*, 393 F. Supp. 3d 927, 938 (C.D. Cal. 2018); *see also* ECF No. 30 at 6 (citing same).

In *Falkner*, the court held an artist who created an outdoor mural on a building could not maintain an action under the Digital Millennium Copyright Act against General Motors for posting to social media a photograph of the mural that did not show the portion of the mural containing the artist's pseudonym. *Id.* The *Falkner* court concluded that "framing a photograph in a manner that excludes copyright management information" does not constitute "removal" or "alteration" of such information as required by the Digital Millennium Copyright Act. *Id.* at 938. The defendant "simply chose not to include" the artist's copyright management information in his photograph. *Id.* Hy-Vee argues the same reasoning applies to this case. ECF No. 15-1 at 13–14.

Williams attempts to distinguish the *Falkner* decision, arguing the court's holding is limited to the "framing" of an image that omits copyright management information, not any "editing or cropping" of the image. ECF No. 26 at 17. He argues the facts of this case are not analogous to *Falkner* because the omission of Williams's copyright management information in the commercial may have resulted from "post-production editing and cropping" of footage that included his

information. *Id.* Williams contends such "editing or cropping" would constitute removal or alteration for purposes of the Digital Millennium Copyright Act. *Id.*

The Court concludes Hy-Vee's decision to frame the scenes used in the commercial in a manner that omitted Williams's copyright management information does not constitute removal or alternation within the meaning of the Digital Millennium Copyright Act. In reaching this conclusion, the Court finds the *Falkner* decision instructive. The *Falkner* court considered the Black's Law Dictionary definitions of "removal" and "alteration," and concluded that under these definitions and common usages of the terms, the defendant did not alter or remove the artist's signature from the photograph. *Falkner*, 393 F. Supp. 3d at 938. Black's Law Dictionary defines "removal" as "[t]he transfer or moving of a person or thing from one location, position, or residence to another." *Removal*, Black's Law Dictionary (11th ed. 2019). It defines an "alteration" to an item as a "change" in the item. *Alteration*, Black's Law Dictionary (11th ed. 2019). Under these definitions, and the common usages of the terms, the Court similarly concludes Hy-Vee did not remove or alter Williams's artistic moniker or Instagram username from the commercial. *Cf. Falkner*, 393 F. Supp. 3d at 938. The depiction of the center portion of the mural in the commercial does not constitute a "transfer or moving" of Williams's copyright management information, nor a "change" in the substance of this information. *See Removal*, Black's Law Dictionary (11th ed. 2019); *Alteration*, Black's Law Dictionary (11th ed. 2019). Hy-Vee simply did not include the lowermost portions of the mural containing Williams's copyright management information in its commercial. *See* ECF No. 15-3 at App. 014.

Williams provides no evidence suggesting Hy-Vee edited or cropped the footage filmed in front of the mural in any manner that would constitute removal or alteration. *See generally* ECF No. 26 at 16–18; *cf. Falkner*, 393 F. Supp. 3d at 938 ("The Court cannot find, and Plaintiff has not pointed to, any case standing for the proposition that failure to include copyright

management information—merely by framing of a scene, rather than by any editing or cropping—constitutes removal or alteration."). He simply alleges omission of his copyright management information may have resulted from Hy-Vee's hypothetical "post-production editing and cropping." ECF No. 26 at 17. Mere speculation and conjecture, however, is insufficient to defeat summary judgment. *Bloom v. Metro Heart Grp. of St. Louis, Inc.*, 440 F.3d 1025, 1028 (8th Cir. 2006) (citing *Moody v. St. Charles Cnty.*, 23 F.3d 1410, 1412 (8th Cir. 1994)).

Because there is no genuine dispute Hy-Vee did not remove or alter Williams's copyright management information in the commercial within the meaning of the Digital Millennium Copyright Act, the Court grants Hy-Vee's request for summary judgment on this claim.

### D.  Validity of Williams's Copyright Registration Certificate

Hy-Vee brings a counterclaim against Williams seeking declaratory judgment that Williams's copyright registration certificate for the mural is invalid. ECF No. 12 at 13–14. Williams's former counsel registered the mural with the United States Copyright Office using the Single Application form. ECF No. 26 at 12; *see* ECF No. 15-3 at App. 041. The Single Application may only be used when the author is the only copyright owner or claimant in the work. 37 C.F.R. § 202.3(b)(2)(i)(B)(1). An individual who registers under the Single Application must confirm "[t]he author and the owner/claimant of the work is the same person, and that person owns all of the rights in the work." U.S. Copyright Office, Circular 11: Using the Single Application 4 (2021), https://www.copyright.gov/circs/circ11.pdf; *see also* ECF No. 15-3 at App. 041.

Hy-Vee argues Williams knowingly provided inaccurate information on his Single Application by stating the author and the owner of the mural were the same person, and that person owned all the rights of copyright in the mural. ECF No. 12 at 13. Specifically, Hy-Vee argues because Williams transferred his copyright ownership in the mural to 6th Avenue Corridor upon receiving final payment for the mural, he "knew that the author and the owner of the Mural were

not the same person." *Id.* Hy-Vee argues Williams's knowing misrepresentations resulted in the improper registration of the mural. *Id.* Williams rejects Hy-Vee's argument. *See* ECF No. 26 at 13. He argues he "is the sole author, copyright owner, and sole lawful claimant of the copyright in the work." *Id.* He therefore argues "his use of the Single Application to register his copyright was proper, and his copyright registration is valid." *Id.*

Hy-Vee requests that the Court issue a request to the United States Copyright Office, pursuant to 17 U.S.C. § 411(b)(2), to advise whether the Copyright Office would have refused Williams's registration if it had known that certain information included in the underlying registration application was inaccurate. ECF No. 12 at 14. Hy-Vee also asks for declaratory judgment that Williams's copyright registration certificate is invalid. *Id.* Hy-Vee has met its burden of demonstrating the statutory criteria for a mandatory referral to the Copyright Office is satisfied.

A copyright holder must register its work with the Copyright Office before filing suit for copyright infringement. 17 U.S.C. § 411(a). To obtain a valid copyright registration, the author of a work must submit to the Register of Copyrights a copy of the work and an application. *Id.* §§ 408, 409. The application must provide information about the work. *Id.* § 409. The Register of Copyrights then reviews the application and, if appropriate, issues a certificate of registration. *Id.* § 410(a). The information on this certificate reflects the information the copyright holder provided on the application. *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 142 S. Ct. 941, 945 (2022) (citing 17 U.S.C. § 410(a)).

Section 411(b)(1) states a certificate of registration is valid "regardless of whether the certificate contains any inaccurate information, unless—(A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration." *Id.* § 411(b)(1)(A)–(B). This section provides a "safe harbor" for registrants

who inadvertently include inaccurate information on their registration applications. *See Unicolors,* 142 S. Ct. at 945.

Section 411(b)(2) provides "[i]n any case in which inaccurate information described under [Section 411(b)(1)] is alleged, the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration." 17 U.S.C. § 411(b)(2). Federal courts agree that § 411(b)(2) "is mandatory in nature, requiring district courts to solicit the advice of the Copyright Office when the statutory conditions are satisfied." *Palmer/Kane L.L.C. v. Rosen Book Works L.L.C.*, 188 F. Supp. 3d 347, 348 (S.D.N.Y. 2016) (collecting cases). After receiving the Copyright Office's advisory opinion, the court may then decide whether to invalidate a copyright holder's certificate of registration. *Cf. DeliverMed Holdings, L.L.C. v. Schaltenbrand*, 734 F.3d 616, 624–625 (7th Cir. 2013).

The law is unsettled regarding what evidentiary burden a movant must meet to satisfy the conditions of § 411(b)(1). Courts of Appeals are split on whether § 411(b)(1)(A)'s "knowledge" element requires indicia of fraud. *Compare Roberts v. Gordy*, 877 F.3d 1024, 1029 (11th Cir. 2017) (holding § 411(b) "codifies the defense of Fraud on the Copyright Office"); *DeliverMed*, 734 F.3d at 618 (noting § 411(b)(1) requires showing of fraud on the Copyright Office) *with Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, L.L.C.*, 925 F.3d 1140, 1147 (9th Cir. 2019) (finding § 411(b) "does not require a showing of fraud"). The Supreme Court has not resolved the issue. *See Unicolors*, 142 S. Ct. at 948–49 (acknowledging the Court was not deciding whether invalidation under § 411(b) required a showing of fraudulent intent). Lower courts remain split. *Compare Lieb v. Korangy Publ'g, Inc.*, CV-15-0040 (AYS), 2022 WL 1124850, at *12 (E.D.N.Y. Apr. 14, 2022) ("[T]his Court finds *Unicolors* clear in adopting nothing more than an actual knowledge requirement.") *with FurnitureDealer.Net, Inc. v. Amazon.com, Inc.*, Civil No. 18-232, 2022 WL 891473, at *11–13, *11 n.7 (D. Minn. Mar. 25, 2022) (holding showing of fraud is

necessary to invoke referral under § 411(b)).

The Supreme Court has instructed that in the context of § 411(b)(1), "the word 'knowledge' means actual, subjective awareness of both the facts and the law." *Unicolors*, 142 S. Ct. at 947. "[W]illful blindness may support a finding of actual knowledge" within the meaning of § 411(b)(1)(A). *Id.* "Circumstantial evidence, including the significance of the . . . error, the complexity of the relevant rule, the applicant's experience . . . and other such matters, may also lead a court to find that an applicant was actually aware of, or willfully blind to, legally inaccurate information." *Id.*

Acknowledging the question is unsettled and the Eighth Circuit has not addressed the issue, the Court finds that § 411(b)(1)(A) does not require fraudulent intent. The plain language of the statute does not require a showing of fraud, only that the claimant included inaccurate information on the application "with knowledge that it was inaccurate." 17 U.S.C. § 411(b)(1)(A); *see also Bruhn NewTech, Inc. v. United States*, 144 Fed. Cl. 755, 802 (2019) ("[Section] 411(b) does not require a showing of fraud or willfulness to invalidate a copyright registration for purposes of filing a copyright infringement claim."); *Gold Value*, 925 F.3d 1140, 1148 (citing *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004)) (explaining "when the statute's language is plain, the sole function of the courts . . . is to enforce it according to its terms" (internal quotation marks omitted)). "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) (collecting cases). The language of § 411(b)(1)(A) only requires that information be included on an application "with knowledge that it was inaccurate." 17 U.S.C. § 411(b)(1)(A). This fairly implies actual knowledge is all that is required. Had Congress intended to impose a higher standard, such as fraud, it would have said so. *Cf. Germain*, 503 U.S. at 253–54; *accord In re Racing Servs., Inc.*, 779 F.3d 498, 505 (8th Cir. 2015). Thus, to demonstrate a registrant knowingly

included inaccurate information in his registration application, a movant need only demonstrate the registrant had "actual, subjective awareness" of the inaccuracy. *Cf. Unicolors*, 142 S. Ct. at 947.

"[C]ourts are free to decide when a sufficient factual record exists such that referral would be fruitful." *Lieb*, 2022 WL 1124850, at \*12 (citing *King-Devick Test Inc. v. NYU Langone Hosps.*, No. 17-CV-9307, 2019 WL 3071935, at \*10 (S.D.N.Y. July 15, 2019)); *Palmer/Kane*, 188 F. Supp. 3d at 348–49. Courts have the discretion to require a movant to "demonstrate that (1) the registration application included inaccurate information; and (2) the registrant knowingly included the inaccuracy in his submission to the Copyright Office" before seeking advice from the Copyright Office. *DeliverMed*, 734 F.3d at 625 (citing Response of the Register of Copyrights to Request Pursuant to 17 U.S.C. § 411(b)(2) at 12, *Olem Shoe Corp. v. Wash. Shoe Co.*, No. 1:09–cv–23494 (S.D. Fla. Oct. 14, 2010), ECF No. 209 ("[B]efore asking the Register whether she would have refused to register a copyright ... a court should feel free to determine whether there is in fact a misstatement of fact.")); *see also Energy Intel Grp., Inc. v. Kanye Anderson Cap. Advisors L.P.*, 948 F.3d 261, 278 (5th Cir. 2020) (finding trial court has discretion—prior to referral—to determine whether inaccuracies were knowingly included in copyright registrations). But a court need not require a movant to prove the two requirements in § 411(b)(1) prior to referral to the Copyright Office. *See* 17 U.S.C. § 411(b)(2) (mandatory referral is triggered where "information described under [§ 411(b)(1)] is *alleged*") (emphasis added); *see also Olem Shoe Corp. v. Wash. Shoe Co.*, No. 1:09-cv-23494, 2010 WL 3505100, at \*3 (S.D. Fla. Sept. 3, 2010) (rejecting argument referral "only triggered if [movant] proves the two requirements in § 411(b)(1)"). Instead, courts consider whether defendants 1) "adequately alleged a violation of § 411(b)(1)" and 2) if "those allegations have factual support." *See Schenck v. Orosz*, 105 F. Supp. 3d 812, 819 (M.D. Tenn. 2015) (internal quotation marks omitted); *see also HealtheState, L.L.C. v. United*

*States*, 160 Fed. Cl. 91, 95 (Fed. Cl. 2002) (finding movant need only "provide[] some basis" for its allegation copyright holder knowingly included inaccurate information in application).

The Court follows the latter approach and considers whether Hy-Vee adequately alleges Williams submitted inaccurate information with his copyright registration that would satisfy the two preconditions of § 411(b)(1). To satisfy these preconditions to copyright registration invalidation, Hy-Vee must allege 1) Williams's copyright registration application included inaccurate information and 2) Williams knowingly included the inaccuracy in his submission to the Copyright Office. *See* 17 U.S.C. § 411(b)(1)(A). If Hy-Vee's allegations satisfy both preconditions, the Court is required to request the Register of Copyrights to advise whether the inaccurate information, if known, would have caused the Register to refuse Williams's registration. *See id.* § 411(b)(2). The Court addresses each precondition in turn.

### 1. Copyright registration application included inaccurate information

Hy-Vee adequately alleges William's copyright registration application included inaccurate information. Hy-Vee argues Williams's application inaccurately stated he owned "all of the rights in the" mural. ECF No. 15-1 at 14–15; ECF No. 30 at 3–5. As discussed, the Court finds Williams does not possess ownership of copyright in the mural. *See supra* Part IV.A. Williams is the author of the mural and 6th Avenue Corridor owns copyright in the mural. Thus, Williams's copyright registration application included two pieces of inaccurate information by affirming first, that the author and the owner of copyright in the mural were the same person, and second, that this person owned all rights in the mural. *See* ECF No. 15-3 at App. 041. Accordingly, Hy-Vee has provided more than "some basis" to allege Williams's copyright application included inaccurate information. *Cf. HealtheState*, 160 Fed. Cl. at 95. The Court next addresses whether Williams knowingly included either of these inaccuracies in his registration application.

### 2.    Williams knowingly included inaccuracies in his registration application

Hy-Vee alleges Williams knowingly provided two pieces of inaccurate information to the Copyright Office in his registration application. ECF No. 12 at 13. First, Hy-Vee argues Williams knew the author and the owner of the mural were not the same person. *Id.* Hy-Vee claims Williams "must have known this was inaccurate due to transferring ownership in the Mural" per the terms of the Agreement. ECF No. 15-1 at 14. Second, Hy-Vee contends Williams knew he did not own all the rights belonging to a copyright owner. ECF No. 12 at 13. Hy-Vee argues the creation of a mural on another's wall necessarily requires a transfer of the right to publicly display the copyrighted mural. ECF No. 30 at 3–4. Hy-Vee supports this argument by analogizing to a case in which the Seventh Circuit held a contract for the sale of photograph negatives necessarily transferred copyright in the underlying photos because division of these rights of ownership "would be inefficient." *See Schiller & Schmidt, Inc. v. Nordisco Cop.*, 969 F.2d 410, 413 (7th Cir. 1992).

Williams rebuts the allegation he knew the author and the owner of the mural were not the same person by arguing he is the rightful owner of copyright in the mural. ECF No. 35 at 3–4. To support this contention, Williams submits sworn affidavits from himself and Breann Bye, the Executive Director of 6th Avenue Corridor. *See* ECF No. 26-3 at App. 066–69; ECF No. 26-3 at App. 070–71. Williams and Bye both attest they understood the Agreement to reserve copyright in the mural to Williams. ECF No. 26-3 at App. 067–68; ECF No. 26-3 at App. 071. In response to Hy-Vee's allegation Williams knew he did not own all rights in the mural, Williams argues that if a right to publicly display the mural was "transferred with the sale of the physical Mural, it was a limited, non-exclusive license to display the physical copy being sold." ECF No. 35 at 3. Such a non-exclusive license would not transfer any intellectual property rights in the mural. *Id.* at 3–4.

The Court finds Hy-Vee sufficiently alleges Williams knowingly included inaccurate information in his copyright registration application by stating one person owned all rights in the mural. Williams signed a contract transferring "ownership of the Work" to 6th Avenue Corridor. *See* ECF No. 15-3 at App. 016. Given the terms and context of the Agreement, Hy-Vee has ample factual support to allege Williams either knew or was willfully blind at least to the necessity of transferring the right to publicly display the mural to 6th Avenue Corridor. *Cf. Unicolors*, 142 S. Ct. at 948; *Schenck*, 105 F. Supp. 3d at 819. One of the exclusive rights comprised in a copyright is the right to "display the copyrighted work publicly." 17 U.S.C. § 106(5). This right, like any of the exclusive rights comprised in a copyright, may be transferred and owned separately. *Id.* § 201(d)(2). To display a work "publicly" means to "display it at a place open to the public or at any place where a substantial number of persons outside of a normal circle of a family and its social acquaintances is gathered . . . ." *Id.* § 101. The mural is located on a wall at the corner of 6th Avenue and College Avenue in Des Moines. ECF No. 26 ¶ 2. It is painted on the exterior of a building, facing a public sidewalk. *See* ECF. No. 15-3 at App. 018–19. Thus, by nature, the mural is publicly displayed within the meaning of the Copyright Act. 17 U.S.C. § 101. This fact alone provides strong basis for Hy-Vee's allegation Williams knew he did not own *all* rights in the mural. It is more than plausible 6th Avenue Corridor would have acquired the right to publicly display the mural—the only way possible to display the mural—along with physical ownership of the mural. Williams's argument that 6th Avenue Corridor was merely granted a "limited, non-exclusive license" to publicly display the mural is unconvincing. *See* ECF No. 35 at 3–4. Williams fails to explain how the right to publicly display a mural fixed on the exterior of a building could be non-exclusive. *See id.* To conclude Williams retained ownership of the right to publicly display the mural would create an absurd and inefficient division of ownership. *Cf. Schiller*, 969 F.2d at 413. Hy-Vee sufficiently alleges Williams cannot credibly claim he did not know

he transferred this right.

The timing of Williams's copyright registration application further supports Hy-Vee's allegation. Williams did not file his application for copyright in the mural until June 26, 2019— four months after the commercial aired and eight months after he entered the commission Agreement with 6th Avenue Corridor. ECF No. 26-1 ¶¶ 37–38. Williams delayed filing for copyright protection until shortly before he filed his first lawsuit against Hy-Vee in the United States District Court for the Central District of California. *See id.* ¶¶ 34–35. The opportunistic timing of William's copyright registration application provides an additional basis to support Hy-Vee's allegation Williams was aware he transferred at least some rights in the mural by signing the Agreement.

The Court therefore concludes Hy-Vee has sufficiently alleged Williams knowingly provided inaccurate information on his registration application by stating one person owned all rights in the mural. By alleging Williams knowingly provided inaccurate information regarding one aspect of his registration application, Hy-Vee has satisfied the second precondition of § 411(b)(1). Having satisfied both of § 411(b)(1)'s preconditions, referral to the Register of Copyrights is mandatory. *See Palmer/Kane*, 188 F. Supp. 3d at 348. Therefore, the Court need not address whether Hy-Vee adequately alleges Williams knowingly provided inaccurate information to the Register of Copyrights when he stated the author and the owner of the mural were the same person.

In conclusion, the Court finds Hy-Vee has met its burden of demonstrating that a referral to the Copyright Office is required. As such, the Court will issue a request to the Register of Copyrights to advise the Court whether knowledge that Williams did not own all the rights in the work registered under Registration Number VAu001359660 would have caused the Register to

refuse his registration.[4] Before doing so, however, the Court will grant each party leave to file a letter with the Court, by no later than fourteen days from the date of this Order, with no more than three proposed questions for the Court to submit to the Copyright Office. Each party may briefly explain the basis of each proposed question. The letter may not exceed five pages. The parties are urged to confer regarding the language of their proposed questions with the objective of reaching agreement on appropriate phrasing that is consistent with this Order. Regardless of whether agreement is reached, the Court will consider the proposed questions and issue its request to the Copyright Office.

## V.    CONCLUSION

Hy-Vee is entitled to summary judgment on all three of Williams's claims for copyright infringement, moral rights infringement, and removal of copyright management information. Hy-Vee demonstrates Williams did not own valid copyright in the mural. As such, he cannot sustain a copyright infringement claim as a matter of law. Hy-Vee is entitled to summary judgment on Williams's moral rights infringement claim because Hy-Vee's allegedly infringing use of the mural in the commercial is not subject to liability under the Visual Artists Rights Act. As to Williams's claim for removal of copyright management information, Hy-Vee is entitled to summary judgment because the commercial did not remove or alter any copyright management information within the meaning of the Digital Millennium Copyright Act. With respect to Hy-Vee's counterclaim for declaratory judgment, the Court finds Hy-Vee has satisfied the preconditions necessary for the Court to seek referral from the United States Copyright Office, as

---

[4] The Court is aware Williams filed a motion to dismiss his complaint against Defendants. *See* Pl.'s Mot. Dismiss, ECF No. 111. In light of this motion, Hy-Vee may, at its discretion, choose not to seek referral to the Register of Copyrights. If Hy-Vee no longer wishes to seek referral from the Register, it shall file a notice with the Court no later than seven days from the date of this Order.

required by 17 U.S.C. § 411(b)(2).

Accordingly, **IT IS ORDERED** that Defendant Hy-Vee, Inc.'s Motion for Summary Judgment, ECF No. 15, is **GRANTED IN PART** as to Plaintiff Chris A. Williams's claims for copyright infringement, moral rights infringement, and removal of copyright management information.

**IT IS FURTHER ORDERED** that both Plaintiff Chris A. Williams and Defendant Hy-Vee, Inc. are granted leave to file a letter with the Court within fourteen days of the date of this Order proposing no more than three questions for the Court to refer to the Register of Copyrights. The Court will consider the parties' proposed questions and issue referral to the Copyright Office pursuant to 17 U.S.C. § 411(b)(2).

**IT IS SO ORDERED.**

Dated on this 15th day of March, 2023.

REBECCA GOODGAME EBINGER
UNITED STATES DISTRICT JUDGE